1  TODD M. MALYNN (SBN 181595)
   Email: tmalynn@feldmangale.com
2  JAMES A. GALE (FL Bar. No. 371726)
   Email: JGale@FeldmanGale.com
3  **FELDMAN GALE, P.A.**
   880 West First Street, Suite 315
4  Los Angeles, California 90012
   Telephone No.  (213) 625-5992
5  Facsimile No.  (213) 625-5993

6  Attorneys for Plaintiff St. Jude
   Medical S.C., Inc.
7
   DAVID J. MICLEAN (SBN 115098)
8  Email:  dmiclean@micleanlaw.com
   **THE MICLEAN LAW GROUP**
9  303 Twin Dolphin Dr., Suite 600
   Redwood Shores, California 94065
10 Telephone No.  (650) 684-1181
   Facsimile No.  (650) 684-1182
11
   Attorneys for Plaintiff Blair Kiland
12

13              **IN THE UNITED STATES DISTRICT COURT**

14            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15 BLAIR KILAND and ST. JUDE          )   CASE NO. CV 10-4105 SBA
   MEDICAL S.C., INC.                 )
16                                    )   **PLAINTIFFS' NOTICE OF MOTION AND**
              Plaintiff,              )   **MOTION FOR A PRELIMINARY**
17                                    )   **INJUNCTION; MEMORANDUM OF**
         v.                           )   **POINTS AND AUTHORITIES**
18                                    )
   BOSTON SCIENTIFIC CORPORATION      )   Date:   December 14, 2010 (Subject to Motion
19 and GUIDANT SALES CORPORATION      )           Shortening Time or Specially Setting
   and DOES 1 through 50 INCLUSIVE    )           Hearing)
20                                    )   Time:  1:00 p.m.
              Defendants.             )   Ctrm:  1, 4th Floor
21                                    )   Judge:  Hon. Saundra Brown Armstrong
                                      )
22
23
24
25
26
27
28

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1

## TABLE OF CONTENTS

2
**Page**

3  I.    INTRODUCTION ........................................................................ 1

4  II.   STATEMENT OF ISSUE ............................................................ 4

5  III.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................... 4

6        A.    KILAND'S EMPLOYMENT WITH BOSTON SCIENTIC ....................... 4

7        B.    KILAND AND ST. JUDE COMMENCE THE INSTANT ACTION ......... 7

8        C.    BSC COMENCES A SECOND-FILED ACTION AND TRIES TO
               USURP THIS COURT'S JURISDICTION .................................... 7

9
         D.    THE MINNESOTA COURT REBUFFS BOSTON SCIENTIFIC'S
10             TRO MOTION AND DEFERS TO THIS COURT .............................. 9

11       E.    BOSTON SCIENTIFIC MOVES FOR STAY IN THIS ACTION ........... 11

12  IV.   ARGUMENT .......................................................................... 11

13        A.    BOSTON SCIENTIFIC SHOULD BE ENJOINED FROM
                PROCEEDING IN THE SECOND-FILED ACTION ........................... 11
14
                1.    The "First-Filed" Court Is Suppose To Determine Proper Forum
15                    Issues Under The First-To-File Rule ..................................... 12

16              2.    Absent Compelling Circumstances, The "First-Filed" Court
                      Should Retain Jurisdiction And Enjoin The Second Action .............. 13
17
          B.    THERE IS NO BASIS FOR PERMITTING BOSTON
18              SCIENTIFIC TO PROCEED WITH THE SECOND-FILED
                ACTION .......................................................................... 14
19
                1.    Boston Scientific Agreed That California Is An Appropriate
20                    Forum For This Dispute ................................................... 14

21              2.    Boston Scientific's Reliance On The Alternative Choice-of-
                      Forum Provision Does Not Meet Its Burden of Proof ................... 17
22
                3.    Even Were Minnesota the Chosen Forum for Some Claims, All
23                    Claims Should be Heard in the Northern District of California,
                      the First-Filed Court, so as to Avoid Splitting the Action ............. 21
24
                4.    No Exception to the First-to-File Rule Applies .......................... 22
25
          C.    AN INJUNCTION SHOULD ISSUE TO PROTECT KILAND'S
26              RIGHT TO CALL UPON FORMER CUSTOMERS AND
                COLLEAGUES ................................................................... 23
27
     V.    CONCLUSION ....................................................................... 25
28

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Accord Piper Aircraft Co. v. Reyno*, 54 U.S. 235 (1981) ...................................................... 3

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991) ................................. 13

*Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881 (1998) ............. 20, 24

*Beverly Glen Music, Inc. v. Warner Communications, Inc.,* 178 Cal. App. 3d
    1142 (1986) ......................................................................................................................... 25

*Boyd v. Oscar Fisher Co.,* 210 Cal. App. 3d 368 (1989) ..................................................... 15

*Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-468-JVS, 2005 WL
    5925585 (C.D. Cal. Sept. 26, 2005) ................................................................................ 12

*Brookwood v. Bank of America,* 45 Cal. App. 4th 1667 (1996) ........................................ 15

*Bryant v. Oxxford Express, Inc.*, 181 F. Supp.2d 1045 (C.D. Cal. 2000) ......................... 12

*City Carpet-Beating, etc, Works v. Jones*, 102 Cal. 506 (1894) ........................................ 24

*D'Sa v. Playhut, Inc.*, 85 Cal. App. 4th 927 (2000) ............................................................. 19

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) ............... 12

*Doe I v. AOL LLC,* 552 F.3d 1077 (9th Cir. 2009) ............................................................. 20

*Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564 (2009) ..................................... 24

*Edwards v. Arthur Anderson LLP,* 44 Cal.4th 937 (2008) .......................................... 19, 24

*Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848
    (8th Cir. 1986) ............................................................................................................. 17, 21

*Frigate Ltd. v. Damia*, No. C 06-04734 CRB, 2007 WL 127996 (N.D. Cal.
    Jan. 12, 2007) .................................................................................................................... 22

*Gentry v. Superior Court,* 42 Cal. 4th 443 (2007) .............................................................. 19

*Gulf Oil Corp. v. Gilbert,* 330 U.S. 510 (1947) .................................................................. 13

*Hall v. Superior Court,* 150 Cal. App. 3d 411 (1983) ........................................................ 20

*Huynh v. Chase Manhattan Bank,* 465 F.3d 992 (9th Cir. 2006) ...................................... 14

*In re American Continental Corporation/Lincoln Sav. & Loan Securities
    Litigation,* 102 F.3d 1524 (9th Cir. 1996) ..................................................................... 13

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949
    (N.D. Cal. 2008) ................................................................................................... 13, 22, 23

*Manuel v. Convergys Corp.*, 430 F.3d 1132 (11th Cir. 2005) ........................................... 13

*Martin v. Geltech Solutions, Inc.*, No. 09-04884 CW, 2010 WL 2287476
(N.D. Cal. June 4, 2010)......................................................................... 12, 13

*Mayers v. Loew's Inc.*, 35 Cal.2d 822 (1950).................................................. 15

*Mercuro v. Superior Court,* 96 Cal. App. 4th 167 (1982)................................... 19

*Meru Networks, Inc. v. Extricom Ltd.*, No. C-10-02021 RMW, 2010 WL
3464315 (N.D. Cal. Aug. 31, 2010) ....................................................... 12

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614
(1985)........................................................................................................ 20

*Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002 (8th Cir.
1993).................................................................................................. 12, 13

*Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119 (8th Cir. 1985).................... 12

*Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982)......................... 12

*Pegasus Trans., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574 (N.D. Ill.
1993)........................................................................................................ 17

*Reigelsperger v. Siller,* 40 Cal.4th 574 (2007) ................................................. 14

*Robert Barndt, Jr. v. County of Los Angeles,* 211 Cal. App. 3rd 397 (1989).................... 25

*Robinson v. Jardine Ins. Brokers Inter'l Ltd.*, 856 F. Supp. 554 (N.D. Ca.
1994)........................................................................................................ 24

*Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947 (5th Cir. 1997) ......................... 12

*Smith v. McIver*, 22 U.S. (9 Wheat.) 532 (1824)................................................. 12

*Sun World, Inc. v. Lizarazu Olivaria,* 804 F. Supp. 1264 (E.D. Cal. 1992)..................... 23

*United States v. Oregon,* 657 F.2d 1009 (9th Cir. 1981).......................................... 12

*USA Scientific, LLC v. Rainin Instr., LLC,* No. C 06-4651 SBA, 2006 WL
3334927 (N.D. Cal. Nov. 16, 2006) ....................................................... 12

*Vision Tech. Design & Mfg., Inc. v. General Wire Spring Co.*, No. CV-F-07-
412 OWW, 2007 WL 2069945 (E.D. Cal. July 17, 2007) .............................. 21, 22

*Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 4th 645 (1997) ...................... 21

**Statutes & Rules**

28 U.S.C. § 1404............................................................................................ 13

Bus. & Prof. Code § 16600..........................................................................*Passim*

Bus. & Prof. Code § 17200..........................................................................*Passim*

Civ. Code § 1642 ........................................................................................*Passim*

1

Civ. Code § 3513 ...........................................................................................19-20

Civil Code § 1667 .........................................................................................19-20

Civil Code § 1668 .........................................................................................19-20

Federal Rules of Civil Procedure 65............................................................. 1, 11

Labor Code § 970 ..........................................................................................*Passim*

Labor Code § 971 ............................................................................................... 19

Labor Code § 972 ............................................................................................... 19

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**TO ALL PARTIES AND COUNSEL OF RECORD, PLEASE TAKE NOTICE THAT** on December 14, 2010, if this matter is not set by court order to be heard sooner pursuant to Plaintiffs' Motion for an Order Shortening Time or Specially Setting Hearing, at 1:00 pm, or as soon thereafter as counsel may be heard, in Courtroom 1 of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clays Street, 4th Floor, Oakland, California 94612, Plaintiffs Blair Kiland ("Kiland") and St. Jude Medical S.C., Inc. ("St. Jude") (collectively, "Plaintiffs") will and hereby do move for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP"), the first-to-file rule, and California's strong public policy against restraints of trade (Bus. & Prof. Code § 16600) and against fraud causing relocation employment in this State (Labor Code § 970).

Plaintiffs' motion seeks to enjoin defendants Boston Scientific Corporation ("BSC") and Guidant Sales Corporation ("Guidant") (collectively, "Defendants" or "Boston Scientific"), their officers, agents, servants, employees and attorneys, and all those acting in active participation with Defendants, from any further activity in a subsequently filed action in Minnesota between substantially the same parties and involving substantially the same issues, styled *Boston Scientific Corporation v. Blair Kiland and St. Jude Medical S.C., Inc.*, Civil No. 10-cv-4053 (DSD/JJK) (the "second-filed action"), from interfering with this Court's jurisdiction or commencing any other action that presents issues relating to this action, and from interfering with Kiland's right to work for St. Jude in his profession, and right to call upon current or former customers, employees or consultants on behalf of St. Jude.

## I.    INTRODUCTION

Plaintiffs herein seek a preliminary injunction to stop Defendants' ongoing abuse of the court system calculated to undermine this Court's priority jurisdiction to decide issues that have been properly, and most logically, raised here first.  Those issues include Plaintiffs' statutory rights and remedies under California law and public policy.

On September 13, 2010, Plaintiffs filed this action involving a dispute between a California employee, Kiland, and his former employer, Boston Scientific, regarding employment and other causes of action that arose here in California.  Kiland and St. Jude both assert claims

arising under California statutes (Bus. & Prof. Code §§ 16600, 17200, and Labor Code § 970); they also assert claims concerning a written employment agreement (the "Employment Agreement") with Boston Scientific that designates this Court as a proper forum in which to litigate disputes.  Upon filing (but not serving) this action, Plaintiffs furnished Defendants a courtesy copy of their complaint to provide an opportunity for early resolution of the suit.  Over ten days later, on September 24, 2010, however, BSC—without prior notice to Plaintiffs—commenced a second-filed action in United States District Court for the District of Minnesota, styled *Boston Scientific Corporation v. Blair Kiland and St. Jude Medical S.C., Inc.*, Civil No. 10-cv-4053 (DSD/JJK), duplicating issues presented in this action and moved for an emergency TRO in Minnesota seeking to undercut this Court's prior jurisdiction and prevent Kiland and St. Jude from proceeding before this Court and litigating their claims in California.  In addition, BSC's proposed TRO expressly sought to prohibit St. Jude from "interfering" with the terminated Employment Agreement between Kiland and Boston Scientific.

The Employment Agreement is expressly comprised of two contemporaneously signed documents, hereinafter individually referred to as the "Guidant Agreement" and the "Boston Scientific Agreement."  The Guidant Agreement provides:

> This Agreement and the Boston Scientific Employment Agreement concerning Employment for U.S. Employees signed by Employee simultaneously with this Agreement constitute the ***entire agreement*** between the parties. . . .

*See* Guidant Agreement ¶16 (emphasis supplied).  In the second-filed action, however, Boston Scientific submitted *only* the Guidant Agreement to the Minnesota Court in order to argue fallaciously that Minnesota was the ***sole*** and ***exclusive*** forum within which to litigate, in an improper attempt to: a) override the well-settled "first-to-file" doctrine that otherwise confers priority jurisdiction upon this Court; b) divest this Court of its proper jurisdiction to resolve this procedural issue; and c) avoid the California forum selection clause in the Boston Scientific Agreement.[1]  Beyond the concealment of this Boston Scientific Agreement, BSC ignored that

---

[1]    Although the Guidant Agreement contains a forum selection provision designating Minnesota, the Boston Scientific Agreement contains an additional forum selection provision designating California and Massachusetts as proper forums.

1  Plaintiff St. Jude is not a party to the Employment Agreement and thus is not bound by any forum

2  selection provision.

3       Any *bona fide* forum selection issue that Defendants might wish to argue should have been

4  presented to this Court as the ***undisputed*** first-filed forum.  Instead, Defendants chose to further

5  pursue its collateral assault upon this Court's priority jurisdiction—even its threshold jurisdiction

6  to decide any venue issue—by moving in the second-filed action in Minnesota for a temporary

7  restraining order ("TRO"), which, if granted, would have barred Plaintiffs, and effectively this

8  Court, from properly proceeding in this first-filed action.

9       On September 30, 2010, however, the Minnesota Court rebuffed BSC's TRO motion as a

10  patent non-starter due to no exigency.  *See* September 30, 2010 Hearing Transcript at 5:11-13;

11  5:22-6:6, Malynn Decl., Ex. A. ("Malynn Decl.").  The Minnesota Court also noted that the

12  Boston Scientific Agreement containing the California choice of forum provision—which BSC

13  had failed to disclose, and which the Plaintiffs herein brought to its attention in opposing the TRO

14  motion—was an obvious "game-changer" that significantly and adversely affected BSC's effort to

15  obtain a TRO.  *Id.* at 24:4-14.  The Minnesota Court thus was inclined to "stay[]" the second-

16  filed Minnesota action in deference to this Court's priority jurisdiction to determine any *bona fide*

17  forum selection issue.  *Id.* at 9; 28-29; 29:25-30:12.  After expressly presupposing that this Court

18  would have sufficient time to rule first, the Minnesota Court continued the matters then before it

19  until November 19, 2010, on which date it has scheduled a hearing on a motion to dismiss, stay or

20  transfer that Plaintiffs filed in response to the second-filed complaint.  *Id.*

21       On October 5, 2010, Defendants—undeterred by the first-to-file rule and what actually

22  transpired at the September 30th hearing—finally appeared in this action with a motion for stay,

23  wherein Defendants outrageously seek to rely upon their improperly initiated second action and

24  wrongfully filed TRO motion to argue that the second-filed action is "further along."  Worse yet,

25  Defendants' motion for stay in this Court is now set for hearing on December 7, 2010, which, of

26  course, is not until after the current November 19th hearing in Minnesota.  Defendants then refused

27  to stay the hearing on November 19th in Minnesota to provide sufficient time for the issue to be

28  presented to this Court, as contemplated by the Minnesota court in the second-filed action.

It is clear that Defendants are once again determined to try to divest this Court of jurisdiction by having the Minnesota Court in the second-filed action undermine this Court and its priority jurisdiction as to all issues, both procedural and substantive.  Under the first-filed doctrine, *this* Court has the power to enjoin Defendants from proceeding in the second-filed action. Plaintiffs here collectively seek to invoke that power to protect their statutory rights and remedies, this Court's jurisdiction, as well as Kiland's individual rights and remedies under the Employment Agreement, which includes a California forum selection clause.

## II.   STATEMENT OF ISSUE

Whether this Court should exercise its power under the first-filed doctrine to enjoin Defendants from engaging in any further activity in the second-filed action, from commencing any other action that presents issues relating to this action, and from otherwise seeking to impair Kiland's right to work for St. Jude (and St. Jude's concomitant right to continue to employ Kiland) and to call upon former customers and colleagues.

## III.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.   KILAND'S EMPLOYMENT WITH BOSTON SCIENTIC

On December 8, 2009, Boston Scientific induced Kiland to leave his employment with competitor Medtronic, Inc. in North Dakota to become a Boston Scientific sales representative in California.  The reasons for Kiland's change in employment and the harsh consequences of that decision are discussed in the Declaration of Blair Kiland, attached as Exhibit B to the Malynn Decl., and in the First Amended Complaint ("FAC") [Dkt. #9].

On December 8, 2009, Boston Scientific and Kiland entered into the Employment Agreement, which is composed of the two aforementioned contemporaneously signed documents that "constitute the entire agreement between the parties."  Guidant Agreement ¶ 16, FAC Ex. 3 [Dkt. #9].  The Employment Agreement, therefore, included as part of the "entire agreement," the following choice-of-forum provision:

> [A]ny action concerning this Agreement shall be commenced exclusively in the courts (including Federal Courts) in either (i) the Commonwealth of Massachusetts or (ii) the state of the Employee's last (or, if still employed, the Employee's current) primary work location for BSC [California].

1   Boston Scientific Agreement ¶ 18, FAC Ex. 6 [Dkt. #9].  Because California is the only state

2   where Kiland ever worked for Boston Scientific, the Employment Agreement allows for disputes

3   concerning the agreement to be litigated in California.

4        The Employment Agreement also expressly recognizes that California's antitrust and

5   unfair competition laws (Bus. & Prof. Code §§ 16600, 17200) make it illegal to include a post-

6   employment covenant not to compete or customer non-solicitation provision in a California

7   employment contract.  Attachment "A" to the Boston Scientific Agreement (FAC, Ex. 7 [Dkt. #9])

8   **expressly provides** that Kiland would ***not*** be bound by such restrictions on his right to continue

9   working in his profession after his employment with Boston Scientific terminated, "regardless of

10  reason for termination."[2]  The employment documents are clear that Kiland retained the right to

11  work for a competitor—*even in California (his former sales territory) calling upon the same*

12  *customers*—after his employment terminated.[3]

13       Kiland began working in California for Boston Scientific in February 2010, after relocating

14  from North Dakota.  Kiland Decl. ¶ 3.  Within two months, it became painfully obvious that

15  Boston Scientific had made material misrepresentations to Kiland, and had withheld material

16  information from Kiland to induce him to join Boston Scientific, to relocate to California, and to

17  forego other opportunities at Medtronic, Inc.  *Id.* ¶¶ 4-5.

18       On or about February 25, 2010, Boston Scientific was federally indicted for willfully

19  concealing information relating to potentially lethal defects in medical devices Kiland was hired to

20  sell in Northern California.  *See* FAC, Ex. 1 [Dkt. #9].  Shortly thereafter, all such products were

21  removed from the market by the U.S. Food & Drug Administration, without notice to Boston

22  Scientific's sales force or to physicians who prescribe those devices.  Kiland Decl. ¶ 5.

23       In March 2010, Kiland learned that he would not have the clinical field support he was

24  promised.  He also discovered that his manager, Chris Larsen, who had recruited him to Boston

25

26

27  _____
    [2]   Boston Scientific Agreement ¶ 5(e) & Attachment "A", FAC Exs. 6 & 7 [Dkt. #9].

28  [3]   The Boston Scientific Agreement (¶ 8) does include a broad "no-hire"/employee non-
    solicitation provision, which is void under Business and Professions Code section 16600.

1    Scientific, had grossly overstated the total revenue volume and future sales opportunities for
2    customers in his assigned territory.  *Id.*

3        After Kiland discovered Boston Scientific's material misrepresentations and omissions, he
4    approached Boston Scientific in the hopes of reaching a mutually agreeable separation from the
5    company.  However, instead of working with him to achieve a mutually agreeable separation,
6    Kiland was flown to Denver Colorado where management subjected him to interrogation and
7    threats.  He was told that he was "locked in" to a three-year contract; that he would be kept out of
8    the industry if he left Boston Scientific; and that Boston Scientific had a successful history of
9    suing former employees.  *Id.* ¶ 8.

10       In June 2010, after Kiland continued to make efforts towards a mutually agreeable
11   separation from the company, he was provided with an "Agreement to Terminate Employment
12   Agreement" from Daniel Gerhan, an employment attorney with Boston Scientific.  This document
13   was everything but a mutually agreeable separation agreement.  It included absolute prohibitions
14   on Kiland's ability to work for any competitor in California, North Dakota, or 11 other states
15   through December 31, 2013, a year beyond the term of the Employment Agreement.  It also
16   included broad releases of any claims, in addition to the repayment of almost $55,000 in bonus
17   and relocation payments.  *Id.*

18       This proposed "agreement" appeared designed to punish Kiland for trying to leave Boston
19   Scientific.  It was not intended or received as a serious offer that anyone would consider or accept.
20   *Id.*  After Kiland figured out that Boston Scientific was not interested in working out a mutually
21   agreeable separation agreement, he decided to allow the Employment Agreement to automatically
22   terminate under its own terms due to the provisions requiring completion of the BSC training
23   requirements.  *Id.* ¶¶ 9-10.

24       On July 2, 2010, Kiland confirmed in writing to Boston Scientific that the Employment
25   Agreement "automatically" terminated per its own terms.  *Id.* ¶ 10.  Shortly thereafter, Kiland
26   delivered all of his equipment and inventory to Boston Scientific; he also delivered two checks
27   totaling $54,511.26 ($39,511.26 for reimbursement of relocation expenses, and $ 15,000 for *pro*
28   *rata* reimbursement of his signing bonus).  *Id.* ¶ 11.

On July 7, 2010, even though the Employment Agreement provided otherwise, Boston Scientific sent Kiland's counsel an email stating its position that the Employment Agreement prevented him from working for a competitor:

> [U]nless the Company and your client can come to an agreement on the terms of his release, he will continue to be in breach of his Employment Agreement, BSC and GSC will not have released him from its terms, and any company *in the CRM industry* that attempts to hire him will expose itself immediately to an interference with contract claim and payment of additional damages or *equitable relief*.

Kiland Decl., Ex. B (attached as Ex. B. to Malynn Decl.) (emphasis supplied).

## B.   KILAND AND ST. JUDE COMMENCE THE INSTANT ACTION

On September 13, 2010, Kiland and St. Jude commenced the instant action. In this action, Kiland brings statutory claims for damages and injunctive relief under California Labor Code section 970 and Business and Professions Code sections 16600 and 17200, as well as common law claims for fraud and breach of contract. St. Jude also seeks relief for unfair competition, seeking to enjoin (a) Boston Scientific's unlawful inclusion of a post-employment restraint in a California employment contract, and its unlawful effort to convert a California term-of-year provision into a post-employment restraint on competition, and (b) Boston Scientific's ongoing efforts to benefit from its unfair and deceptive employment practices leading up to its criminal indictment and the total product recall. In addition, Kiland and St. Jude seek declaratory relief relating to the Employment Agreement as well as a determination that California is a proper forum for Kiland's individual claims against Boston Scientific and St. Jude's independent claims for unfair competition, where Kiland's situation is but one example of the unfair, unlawful and deceptive employment practices engaged in by Boston Scientific.

On September 14, 2010, St. Jude provided Boston Scientific with a courtesy copy of the Complaint and inquired whether an amicable resolution was possible without need of further litigation. FAC, Ex. 8 [Dkt. #9]. The parties then began settlement discussions.

## C.   BSC COMENCES A SECOND-FILED ACTION AND TRIES TO USURP THIS COURT'S JURISDICTION

On Friday, September 24, 2010, ten days after Kiland and St. Jude had filed this first-filed action, BSC abruptly filed a second-filed action in the United States District Court for the District

of Minnesota ("Minnesota complaint").  The Minnesota complaint duplicates issues presented in this first-filed action and expressly seeks to, *inter alia,* enjoin Kiland from working for St. Jude. *See* Minnesota Complaint ¶¶ 21, 25, 47, Prayer for Relief ¶ 3, Malynn Decl., Ex. C.  In an effort to mislead the Minnesota Court, however, BSC attached *only* the Guidant Agreement (not the entire Employment Agreement, which includes a California forum selection clause) to the Minnesota complaint in order to argue fallaciously that Minnesota was the ***sole*** and exclusive forum for its dispute with Kiland, and that the first-filed doctrine that otherwise confers priority jurisdiction upon this Court should be disregarded.[4]  Beyond such concealment, BSC ignored that St. Jude is not even a party to the Employment Agreement and thus is not bound by any forum selection provision.  Moreover, BSC asserts a Tortious Interference With Contract claim against St. Jude based on its "hiring him [Kiland] knowing he was bound by a term-of-years Agreement with Boston Scientific."  Minnesota Complaint ¶ 45, Malynn Decl., Ex. C.

Rather than present to this Court and adjudicate the venue issue, BSC chose to pursue its effort to usurp this Court's priority jurisdiction—even its threshold jurisdiction to decide any *bona fide* forum selection issue.  On September 27, 2010, before even serving its complaint, BSC filed an "emergency" motion in the second-filed Minnesota action for TRO, which, if granted, would have barred Plaintiffs, and effectively this Court, from proceeding further in this first-filed action. *See* Motion for TRO and Proposed TRO, Malynn Decl. Exs. D & E.

BSC thereafter filed its TRO motion in the second-filed action on Monday, September 27, 2010, before St. Jude and Kiland responded to BSC's then-outstanding request that counsel accept service.[5]  BSC argued to the Minnesota court that it should: a) ignore the first-to-file rule, b)

---

[4]    The Minnesota complaint, moreover, attaches a non-redacted copy of the Guidant Agreement without regard for Kiland's privacy.  BSC's counsel attempted to justify this disclosure by contending that the document's confidentiality provision is intended to protect only Boston Scientific; Plaintiffs disagree.  *See* Guidant Agreement ¶ 6 ("The terms of this Agreement are completely confidential . . . .").  On September 29, 2010, inasmuch as BSC saw fit to divulge Kiland's private information into the public domain, Plaintiffs filed their First Amended Complaint, which attached the entire Employment Agreement, which expressly includes a California forum selection clause.

[5]    Indeed, while BSC's counsel sent the second-filed Minnesota complaint over to undersigned counsel on Friday evening, September 24th, counsel was out of the office and did not receive it until Monday morning, shortly before the TRO was served.

1 ignore the Boston Scientific Agreement, c) ignore the integration clause that makes the Boston

2 Scientific Agreement a part of the entire Employment Agreement, d) ignore the California choice

3 of forum clause, and e) enjoin St. Jude and Kiland from pursuing this action, because of alleged

4 "compelling circumstances," namely, the forum selection clause in the Guidant Agreement.

5 Boston Scientific's proposed TRO order also expressly sought to enjoin St. Jude "from interfering

6 with the contractual relations between Boston Scientific and Kiland, including but not limited to

7 the Agreement." *See* BSC's Proposed TRO in the Minnesota action, Malynn Decl., Ex. D.

8       St. Jude and Kiland promptly filed their Opposition to the TRO motion in Minnesota on

9 September 29, 2010. On September 30, 2010, they also filed a Motion to Dismiss, Stay or

10 Transfer the Minnesota action in favor of the instant action.

11      **D.     THE MINNESOTA COURT REBUFFS BOSTON SCIENTIFIC'S TRO**

12              **MOTION AND DEFERS TO THIS COURT**

13      On September 30, 2010, the Minnesota Court rebuffed BSC's TRO motion as a patent

14 non-starter due to an obvious lack of exigency:

15      THE COURT: . . . It occurred to me first on reading the initial papers filed by Boston
     Scientific that I didn't see the usual indications for a TRO . . . .

16                                    \* \*\*

17      Apparently, Mr. Kiland turned in his computer, gave back all the trade secrets, all the
     lists of customers and so forth. Everything except what's in his mind, I guess, he

18      gave back. Plus, apparently, he even apparently gave back some money for whatever
     reason.

19      So, number one, I didn't see the need for a status quo TRO. That was my first
     reaction and even reading -- before I saw anything else.

20

21 *See* September 30, 2010 Hearing Transcript at 5:11-13; 5:22-6:6, Malynn Decl., Ex. A.

22      The Minnesota court also noted that the Boston Scientific Agreement containing the

23 California choice of forum provision—which BSC failed to bring to the Minnesota Court's

24 attention and which Plaintiffs did present to the Minnesota Court—was an obvious "game-

25 changer." Addressing Boston Scientific's counsel, it stated:

26      THE COURT: The real problem is when the Court finds out there's another contract
     that appears to be a viable agreement that would control what this Court is going to

27      do, that throws, I would say, a curve ball or a monkey wrench into your fine
     argument.

28

> When I read your brief, as I said, it was a slam dunk. But once I find out that there's another contract that appears to have the same viability as the one that you're quoting that has another venue clause, all of a sudden, you know, it doesn't have the same strength of the argument that you had.

*Id.* at 24:4-14. The Minnesota Court thus was inclined to "stay[]" is action in deference to this Court's priority jurisdiction to determine any *bona fide* forum selection issue:

> THE COURT: See, it could be if I were kind of a dictatorial judge, which I'm not, I could just say, look, we're not going to hear this today, we're going to hear it on November 19th, we'll hear both motions together, and that will give the California judge a chance to react, I hope, and maybe with some prodding on the part of attorneys she would react by that time, by this time in November, because that's a long way off as far as I'm concerned and probably as far as you're all concerned.
>
> * * *
>
> But considering my dictatorial comment that I made earlier, it seems to me that makes a lot of common sense also, that what we ought to do is to continue this hearing until November 19th, not act in any regard upon the matters until everybody has had a chance to file their papers, had a chance to brief anything that has not been briefed at this point in counter to those matters that have been before the Court.
>
> * * *
>
> And, frankly, that would also give you a chance, if they are going to move in California swiftly, to give you a chance to appear out there and to make the motion that you mad – a similar motion to the one here except it will be the opposite end of it saying, judge, you ought not to proceed because up in Minnesota we've go this very fine experienced judge who understands all the issues, he's had a hearing already, he's indicated he understands the issues, but doesn't want to move head until such time as we have a little more time for the attorneys to respond to each other.
>
> * * *
>
> [Addressing Boston Scientific's counsel] And I know you go away disappointed, but at the same time, you know, one of the things that I've found as a judge is that in every case there's somebody that's disappointed and somebody that's not.
>
> * * *
>
> But I think that's what we ought to do and I think what I'll do is issue a written order **staying** this matter—we are going to issue a written order so it will be filed and so Judge Armstrong will know about it also—a written order **staying** this matter until November 19th, at which time this Court will hear both matters, that is, the motion brought by Boston Scientific and the motion brought by Kiland and St. Jude.
>
> We'll hear both matters and be prepared at that time to rule on both matters because they do—obviously they overlap and they do have like issues in them and obviously it's my belief that possibly other matters will occur here or maybe in California.

*Id.* at 9:4-12, 28:9-29:3, 29:11-14, 29:25-30:12, Malynn Decl., Ex. A (emphasis added). Having expressly presupposed that this Court would have sufficient time to rule first, the Minnesota Court thereafter issued an order continuing the matters then before it until November 19, 2010, which is the hearing date scheduled on the Motion to Dismiss, Stay or Transfer, pursuant to which

1   Plaintiffs herein have requested that the Minnesota Court defer to this Court's ruling on the proper

2   forum issue.[6]

3        **E.     BOSTON SCIENTIFIC MOVES FOR STAY IN THIS ACTION**

4        On October 5, 2010, Defendants finally appeared in this action with a motion for stay.

5   Rather than request that this Court resolve the proper venue issues, Defendants ask that this Court

6   ***not*** resolve the forum selection issues raised in Plaintiffs' first-filed complaint.   Defendants

7   boldly—and incorrectly—seek to have this Court ***defer*** the resolution of whether it properly has

8   jurisdiction over all the parties and all the claims to the second-filed proceeding.   Even though

9   both actions, procedurally, remain at the pleadings stage, Defendants improperly try to

10  "bootstrap" BSC's second-filed action and TRO motion into an argument that the second-filed

11  action in Minnesota is somehow "further along."  [Dkt. # 13]

12       Because the Court did not have an available date to hear Plaintiffs' motion for a

13  preliminary injunction prior to November 19, 2010, Plaintiffs are moving for an order specially

14  setting this matter for hearing.  Defendants, in furtherance of their effort to usurp this Court's

15  jurisdiction, declined to stipulate to an order specially setting the hearing on this motion.

16  **IV.   ARGUMENT**

17       **A.     BOSTON SCIENTIFIC SHOULD BE ENJOINED FROM PROCEEDING**

18              **IN THE SECOND-FILED ACTION**

19       Under FRCP Rule 65, "[w]hen a district court has jurisdiction over all parties involved, it

20  may enjoin later filed actions."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

21  843-44 (9th Cir. 1986); *United States v. Oregon,* 657 F.2d 1009, 1016 n. 17 (9th Cir. 1981).

22  Moreover, "[a]bsent special circumstances, the first case should proceed while the second case is

23  enjoined." *Broadcom Corp. v. Qualcomm Inc.*, No. SACV 05-468-JVS, 2005 WL 5925585, at *2

24

25  _____

26  [6]   Local practice in the District of Minnesota requires that all motions must be assigned a hearing
    date upon filing.  In an effort to ensure sufficient time to raise the proper forum issue with this
    Court, St. Jude requested that Defendants agree to stay the second-filed Minnesota action until
27  such time as this Court resolves the forum selection issues.  Defendants refused the request.  *See*
    Malynn Decl., Ex. F.  Therefore, if this Court is unable to hear this motion prior to November 19,
28  2010, Plaintiffs will ask the Minnesota court to continue the November 19th hearing until after this
    Court has considered and ruled upon the instant motion and proper venue issues.

1   (C.D. Cal. Sept. 26, 2005); *Bryant v. Oxxford Express, Inc.*, 181 F. Supp.2d 1045, 1050 (C.D. Cal.

2   2000) (enjoining defendant from prosecuting second action); *see also Decker Coal Co.*, 805 F.2d

3   at 844 ("trial court exercised sound judicial discretion in enjoining the later filed Illinois action.").

4   "[T]his 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but

5   rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*

6   *Systems, Inc. v. Medtronic, Inc.,* 678 F.2d 93, 94-95 (9th Cir. 1982).   It is a doctrine that enables

7   courts "[t]o conserve judicial resources and avoid conflicting rulings."  *Northwest Airlines, Inc. v.*

8   *American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993).  It does not require identical parties

9   or issues—only a "substantial overlap" between two actions.  *Save Power Ltd. v. Syntek Finance*

10   *Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The rule does not . . . require that cases be identical.

11   The crucial inquiry is one of 'substantial overlap.'") (citation omitted).

12          **1.     The "First-Filed" Court Is Suppose To Determine Proper Forum**

13                    **Issues Under The First-To-File Rule**

14          It is well-settled that "[i]n all cases of concurrent jurisdiction, the court which first has

15   possession of the subject must decide it."  *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 534 (1824);

16   *Pacesetter*, 678 F.2d at 96 ("the court in the first-filed action" should resolved proper forum

17   issue); *Martin v. Geltech Solutions, Inc.*, No. 09-04884 CW, 2010 WL 2287476, at *2 (N.D. Cal.

18   June 4, 2010) ("The court with the first-filed action should . . . decide whether an exception to the

19   first-to-file rule applies."); *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8[th]

20   Cir. 1985) ("Where two courts have concurrent jurisdiction, the first court in which jurisdiction

21   attaches has priority to consider the case."); *see also Meru Networks, Inc. v. Extricom Ltd.*, No. C-

22   10-02021 RMW, 2010 WL 3464315 (N.D. Cal. Aug. 31, 2010) (deferring to first-filed court to

23   decide proper venue); *USA Scientific, LLC v. Rainin Instr., LLC*, No. C 06-4651 SBA, 2006 WL

24   3334927 (N.D. Cal. Nov. 16, 2006) (deferring to first-filed forum to resolve proper forum issue).

25

26

27

28

2.    **Absent Compelling Circumstances, The "First-Filed" Court Should Retain Jurisdiction And Enjoin The Second Action**

As this Court has stated, "'there is a strong presumption . . . that favors the forum of the first-filed suit under the first-filed rule.'"[7] *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949, 957 (N.D. Cal. 2008) (citation omitted). "The prevailing standard is that 'in the absence of compelling circumstances' the first-filed rule should apply." *Northwest Airlines*, 989 F.2d at 1005 (citations omitted).

It is a simple matter to determine whether the first-to-file rule applies, so as to shift the burden to the defendant to avoid the rule. "In applying the first-to-file rule, a court looks to three threshold factors: '(1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues.'" *Martin v. Geltech Solutions, Inc.*, No. 09-04884 CW, 2010 WL 2287476, at *1 (N.D. Cal. June 4, 2010) (citation omitted).

Here, all three factors are met.[8] Accordingly, "the party objecting to jurisdiction in the first-filed forum [must] carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). The circumstances under which an exception might "be made include bad faith, anticipatory suit and forum shopping." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). Another exception may exist if there is a compelling reason to transfer the action to the second-filed court, such as pursuant to 28 U.S.C. § 1404. *Martin*, 2010 WL 2287476 at *2.[9]

---

[7]   *Accord Piper Aircraft Co. v. Reyno,* 54 U.S. 235, 255 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 510, 508 (1947); *In re American Continental Corporation/Lincoln Sav. & Loan Securities Litigation,* 102 F.3d 1524, 1545 (9th Cir. 1996) ("strong presumption that plaintiff's choice of forum will not be disturbed").

[8]   This action was filed first. All the parties in the second-filed Minnesota action are before this Court, although *not* all the parties in this action are before the Minnesota court. Finally, this suit encompasses *all* of the issues raised in the Minnesota complaint, along with additional issues arising under California statutes and public policies that are *not* present in the Minnesota action.

[9]   In this case, Boston Scientific has twice declined to even try to meet its burden of proof in this Court. Instead of filing a motion to dismiss, stay or transfer, BSC has tried to usurp this Court's jurisdiction by filing a less inclusive, but entirely duplicative second-filed action in Minnesota. When the Minnesota court took no action on BSC's motion for a TRO to enjoin this proceeding, Boston Scientific ducked the issue a second time by asking this Court to defer to the second-filed court to decide whether this Court has jurisdiction over all the parties and all the claims in accordance with well-settled jurisprudence.

**B.    THERE IS NO BASIS FOR PERMITTING BOSTON SCIENTIFIC TO PROCEED WITH THE SECOND-FILED ACTION**

Boston Scientific cannot overcome the strong presumption in favor of Kiland and St. Jude's choice of forum for numerous reasons, which plainly show that the first-filed action was properly filed in the forum with the greater interest in the dispute:

1.    Kiland was a California citizen and resident when his claims against Boston Scientific accrued and was in the process of relocating his residence from California when this suit was filed. All of his former customers and colleagues at Boston Scientific who might be witnesses in this case are in California;

2.    The operative facts relating to Kiland's employment with Boston Scientific, including where Boston Scientific made false representations and engaged in the unfair competition, occurred in, or in anticipation of, his being in California, where Kiland lived and worked;

3.    California has a substantial interest in this case, which involves a California employment contract and the application of California Labor Code section 970 and Business and Professions Code sections 16600 and 17200;

4.    Nothing concerning Kiland's employment with Boston Scientific occurred in Minnesota; Kiland has no relationships with Boston Scientific customers or employees in Minnesota; Boston Scientific, itself, is not even a Minnesota resident.[10]

No exception to the first-to-file rule applies.

**1.    Boston Scientific Agreed That California Is An Appropriate Forum For This Dispute**

**a.    California Civil Code section 1642**

California law is clear that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."  Cal.

---

[10]   Nevertheless, in trying to usurp this Court's jurisdiction by filing a less inclusive, but entirely duplicative lawsuit and moving to stay this proceeding, Boston Scientific has raised the immaterial point that *after* Boston Scientific induced Kiland to become a California resident to work for it in Northern California, and *after* Kiland's dispute with Boston Scientific arose concerning the termination of his Employment Agreement and his right to work in his profession for a competitor, Kiland has begun his move back to North Dakota.  Federal law is clear, however, that any "after-acquired residence" is immaterial.  *See Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 1001-02 (9th Cir. 2006) (holding that residency when claim arose is material consideration).

1   Civ. Code § 1642 (West 2010); *Reigelsperger v. Siller,* 40 Cal.4[th] 574, 580 (2007); *Mayers v.*

2   *Loew's Inc.,* 35 Cal.2d 822, 826-28 (1950).  When related documents state that, together, they

3   form the "entire agreement" between the parties, they are necessarily part of one transaction and

4   Civil Code section 1642 requires that they be construed together as one contract.  *See Mayers,* 35

5   Cal.2d at 826-28; *Boyd v. Oscar Fisher Co.,* 210 Cal. App. 3d 368, 378 (1989) (section 1642

6   "presents a question of law" when there is no conflicting evidence).  As one contract, it is well-

7   settled that a provision in one related document can control a dispute allegedly regarding the terms

8   of another document.  *See, e.g., Brookwood v. Bank of America,* 45 Cal. App. 4th 1667, 1675-76

9   (1996) (where multiple contracts are part of substantially one transaction, an arbitration provision

10  in one contract controls disputes regarding a related agreement).

11        Here, the Employment Agreement authored by Boston Scientific, and signed by Kiland,

12  consists of two contemporaneously signed documents (the Guidant Agreement and the Boston

13  Scientific Agreement) relating to the same subject matter (Boston Scientific's employment of

14  Kiland, and their rights and obligations after his employment terminated), and ***expressly states***

15  ***that the two documents form the "entire agreement" between the parties***.  Guidant Agreement

16  ¶ 16 (emphasis supplied).  This provision expressly recognizes what section 1642 would otherwise

17  imply without this provision—that the Guidant Agreement and Boston Scientific Agreement must

18  be construed together as one contract as they were executed as part of one transaction.

19                    **b.      The California Forum Selection Clause**

20        Boston Scientific agreed that California would be an appropriate forum for disputes

21  concerning the Employment Agreement, including claims against Boston Scientific for

22  fraudulently inducing Kiland to sign it.  Boston Scientific Agreement ¶ 18, FAC Ex. 6.  The

23  California forum selection clause also plainly covers Kiland's claims for declaratory relief: (i) that

24  the Employment Agreement's non-compete obligations applicable to Kiland as a California

25  employee "automatically" terminated (or were otherwise terminated) as Kiland confirmed on July

26  2, 2010; (ii) that Kiland had the express right to work for a competitor in his profession after the

27  termination of his employment with Boston Scientific, "regardless of reason for termination"; and

28

1   (iii) that the broad "no-hire"/employee non-solicitation provision in the Employment Agreement is

2   void because it violates California's strong public policy against restraints of trade.

3       The California forum selection clause also covers BSC's duplicative claims in the

4   Minnesota action, which were filed to restrain competition by Kiland, the subject matter of the

5   Boston Scientific Agreement.   In its complaint, as well as in its proposed TRO submitted to the

6   Minnesota court, BSC expressly seeks to enjoin St. Jude from employing Kiland for the term of

7   the Employment Agreement.   *See* Minnesota Complaint ¶¶ 21, 25, 47, Prayer for Relief ¶ 3,

8   Malynn Decl., Ex. C; *see also* BSC's Proposed TRO ¶ 4, Malynn Decl., Ex. D.  BSC's allegations

9   and prayers for relief in the Minnesota action directly implicate (and contradict) Boston

10  Scientific's express promise in Attachment A to the Boston Scientific Agreement (relating to

11  modifications for California employees) that Kiland had the right to work for a competitor after

12  his employment with Boston Scientific terminated.   In addition, BSC's principal claim for

13  damages is directed at St. Jude, not Kiland, for employing Kiland during the unexpired term of the

14  Employment Agreement.   *Id.* ¶ 46.  Again, Boston Scientific's promise in Attachment A to the

15  Boston Scientific Agreement is directly implicated by this claim in the second-filed action.

16              **c.       Boston Scientific's Counter Arguments Lack Merit**

17      In an effort to avoid its agreement to litigate the subject claims in California and to claim

18  exclusive jurisdiction in Minnesota, Boston Scientific makes two arguments that have no record or

19  legal support.  First, Boston Scientific argues that the Guidant Agreement and the related Boston

20  Scientific Agreement are "separate" contracts, and should not be construed together.  Factually,

21  this argument fails because the Guidant Agreement's integration clause expressly provides that

22  both documents constitute the "entire agreement" between the parties—they are not separate at all.

23  Rather, they both relate to Kiland's employment with Boston Scientific, Kiland's right to work for

24  a competitor, and Boston Scientific's threats and efforts to coerce Kiland from working for a

25  competitor.   Legally, Boston Scientific's effort to construe the contracts, separately, as two

26  contracts fails, because of Civil Code section 1642's requirement that both documents, being part

27  of the same transaction, must be construed together as one contract.

28

Second, under the false premise that the two documents are "separate" agreements, Boston Scientific argues that Kiland's claims against Boston Scientific, and BSC's duplicative claims against Kiland, only concern the Guidant Agreement, and do not implicate the Boston Scientific Agreement.  As shown above, this argument has no merit.  Kiland's claims concern the Boston Scientific Agreement, including but not limited to when the non-competition provision terminated, Kiland's right to work for St. Jude "regardless of reason for termination," and Kiland's right to solicit former customers and colleagues, notwithstanding any post-employment restraint.

When the two related documents are construed together as one contract, as required by paragraph 16 of the Guidant Agreement and Civil Code section 1642, the Employment Agreement provided Kiland a choice of three alternative forums to litigate his dispute with Boston Scientific: California, Massachusetts and Minnesota.  Because Kiland's claims against Boston Scientific, and BSC's duplicative claims in the second-filed action in Minnesota, concern the Employment Agreement, including Paragraph 5(d) and Attachment "A" to the Boston Scientific Agreement, California plainly is an appropriate forum for this dispute.

## 2.     Boston Scientific's Reliance On The Alternative Choice-of-Forum Provision Does Not Meet Its Burden of Proof

To overcome Kiland and St. Jude's choice of forum, it is not enough for Boston Scientific to point to an alternative forum selection clause.  Boston Scientific must prove that the forum selection clause it relies on clearly, and unambiguously, is the *only* operative provision, and that it covers *all* the parties and *all* the claims.  If not, this Court may properly enjoin the second-filed action to avoid claim splitting.  *See, e.g., Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848 (8th Cir. 1986); *see also Pegasus Trans., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574 (N.D. Ill. 1993).   Boston Scientific has not, and cannot, meet this burden of proof.

### a.     Boston Scientific, At Best, Is Relying Upon A Contractual Ambiguity of Its Own Making

The Employment Agreement recognizes California's overriding interests in any litigation between Kiland and Boston Scientific.  It designates California as an appropriate forum for disputes, and recognizes that it would violate California's strong public policy against contractual

1   restraints to include a non-compete in a California employment agreement.  Kiland has the express

2   right to work for St. Jude and to bring claims in California concerning the termination of his

3   employment with Boston Scientific, and his right to work for St. Jude thereafter.

4   In considering BSC's motion for a TRO, the Minnesota Court commented, when focusing

5   just on Kiland and St. Jude's position, that it seems "obvious" that Kiland and St. Jude's claims

6   are properly filed in California.  *See* September 30, 2010 Hearing Transcript at 6:12-13.  This led

7   the court to comment that BSC's lone citation to an alternative forum selection provision, at best,

8   created an "ambiguity," the application of which was "murky."  *Id.* at 6:8, 8:5, 21:6-15, 24:18.  In

9   response, BSC acknowledged that it bore the burden of proving that things were not "murky," and

10  that the agreements were not ambiguous.  *Id.* at 24-15-21.  However, because Boston Scientific is,

11  at best, relying upon a contractual ambiguity of its own making, the application of which to

12  Plaintiffs' claims in California and BSC's claims in Minnesota is far from clear, Boston Scientific

13  cannot remotely meet its burden of proving a "compelling circumstance" to deprive Kiland and St.

14  Jude of their choice of forum, and this Court of jurisdiction over claims that arose in California.

15              **b.       St. Jude Is Not Bound By The Minnesota Forum Clause**

16  St. Jude is not a party to the Employment Agreement, and therefore is not bound by any

17  choice-of-forum provision that would deprive it from bringing independent claims against Boston

18  Scientific in California.  In pleadings before this Court and in Minnesota, Boston Scientific has not

19  even argued, let alone provided any authority, that St. Jude, as a non-signatory, should somehow

20  lose its right to sue Boston Scientific for unfair competition in a forum of its choice.  St. Jude's

21  unfair competition claims transcend the dispute between Kiland and Boston Scientific.  Kiland's

22  issues are just evidence of Boston Scientific's widespread practice of trying to "bind up" sales

23  representatives to long-term employment agreements with overly broad restrictive covenants by

24  withholding material information regarding its criminal misconduct, guilty plea, defective

25  products, planned reductions in R&D, and other changes in its sales division.  St. Jude is not

26  required to bring its unfair competition claims in a forum of Boston Scientific's choosing.[11]

27

28  _____
    [11]  Moreover, with respect to St. Jude's declaratory relief claim concerning its right to employ
    Kiland, that claim, if anything, would fall within the California choice of forum provision.  The

1
2

          **c.**     **It Would Be Unreasonable To Enforce A Forum Selection Clause To Affect A Waiver Of The Statutory Rights Asserted By Kiland**

3        Finally, it would be unreasonable to have the Minnesota Court decide issues to the extent

4 that it would deprive Plaintiffs of statutory rights in California.  Under California law, contracting

5 parties do not have the right to waive the protections of laws adopted by the California Legislature

6 for a public reason (*i.e.,* not just to protect individual interests).  *See* Civ. Code § 3513 ("Any one

7 may waive the advantage of a law intended solely for his benefit. But a law established for a

8 public reason cannot be contravened by a private agreement.").  Any attempt to waive or "exempt"

9 oneself from a strong public policy of California is, itself, unlawful.  *See* Civil Code §§ 1667,

10 1668 ("All contracts which have for their object, directly or indirectly, to exempt anyone from

11 responsibility for his own fraud, or willful injury to the person . . . , or violation of law, whether

12 willful or negligent, are against the policy of the law."); *Gentry v. Superior Court,* 42 Cal. 4th 443,

13 453-56 (2007) (citing Civil Code section 1668 and holding that Labor Code provisions, such as

14 minimum wage and overtime laws, are enacted for a public reason and therefore cannot be waived

15 by employees in California, and waiver attempts would be unlawful).

16        Two laws enacted for a public reason are at issue in this litigation—Labor Code section

17 970 and Business and Professions Code section 16600:

18     •  ***Labor Code section 970*** makes it unlawful to "influence, persuade, or engage any
19        person to change . . . from any place outside to any place within the State . . . for
       the purpose of working in any branch of labor, through or by means *of* knowingly
20        false representations . . . concerning . . . [t]he kind, character, existence of such
       work . . . ." Labor Code § 970(a).  This statute was adopted for "a public purpose:
21        to protect the community from the harm inflicted when a fraudulently induced
       employment ceases and the former employee is left in the community without roots
22        or resources and becomes a charge on the community."  *Mercuro v. Superior
       Court,* 96 Cal. App. 4th 167, 180 (1982).  To deter such misconduct and avoid the
23        corresponding burden on California's economy, the Legislature made such conduct
       criminal and provided a special civil remedy that "double damages resulting from
24        such misrepresentations . . . ." Labor Code §§ 971, 972.

25     •  ***Business and Professions Code section 16600*** provides:  "Except as provided in
       this chapter, every contract by which anyone is restrained from engaging in a

26

27 Boston Scientific Agreement was specifically provides when a former employee may work for a
competitor.   St. Jude's employment of Kiland implicates the post-employment rights and
obligations of Kiland and Boston Scientific—not just their rights/obligations while Kiland was
28 employed.  Accordingly, both St. Jude's unfair competition and declaratory relief claims against
Boston Scientific are properly filed in California.

1

2

lawful profession, trade, or business of any kind is to that extent void." This anti-trust law makes it unlawful to include a post-employment restraint on competition in a California employment contract. *See Edwards v. Arthur Anderson LLP*, 44 Cal.4th 937, 949 (2008) (discussing California's "prohibition-against-restraint rule" in California employment contracts); *D'Sa v. Playhut, Inc.*, 85 Cal. App. 4th 927, 933(2000) (because restraint on competition "violated public policy, it necessarily followed that requiring prospective workers to sign [it] as a condition of employment was contrary to law."); *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 908 (1998) (violation of Bus. & Prof. Code § 16600 constitutes unfair competition prescribed by Bus. & Prof. Code § 17200).

3

4

5

6

7

   In *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614 (1985), the

8

United States Supreme Court recognized that a forum selection clause should not be enforced

9

when it would work as a waiver of rights enacted for a public reason, such as where "choice-of-

10

forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to

11

pursue statutory remedies for antitrust violations . . . ." *Id.* at 637 n.19.  California courts have

12

followed this rule, even when the statutes at issue do not include a specific anti-waiver provision.

13

*See*, *e.g.*, *Hall v. Superior Court,* 150 Cal. App. 3d 411 (1983) (refusing to enforce a Nevada

14

forum selection clause that was coupled with a Nevada choice-of-law provision because of

15

California's strong policy to protect its citizens from securities fraud as reflected in California's

16

"blue-sky" statutes).   The Ninth Circuit has not hesitated to follow this rule to prevent a

17

contractual waiver of public policy or statutory remedies in California in situations where there is

18

a specific anti-waiver provision or when a statutory remedy would be unavailable in the chosen

19

forum, and California has a greater interest in the dispute. *See, e.g., Doe I v. AOL LLC,* 552 F.3d

20

1077, 1084 & n. 12-13 (9th Cir. 2009) ("forum selection clause, together with the choice of law

21

provision, [improperly] effect a waiver of statutory remedies").

22

   California employees should be afforded the same protection as California consumers from

23

the attempted forced waiver of statutory remedies, such as Labor Code § 970, through the use of

24

forum selection clauses coupled with choice-of-law provisions.  In *Gentry*, the California Supreme

25

Court declined to enforce an arbitration provision when it might exempt an out-of-state employer

26

from California's minimum wage and overtime laws, or deprive California employees of the class-

27

action remedy, even though the Labor Code does not include a specific anti-waiver provision. *See*

28

42 Cal. 4th at 453-56.  The Supreme Court relied upon Civil Code § 1668. *Id.*   This Court should

1   similarly hold that BSC cannot deprive Kiland of his rights under Labor Code section 970 through

2   the enforcement of a forum selection clause coupled with a choice-of-law provision.

3       With respect to Business and Professions Code section 16600, when properly construed, it

4   operates as a specific anti-waiver provision.  It expressly voids "every" contract, whether a

5   covenant not to compete, a choice-of-law provision or a forum selection clause, "to the extent"

6   that the contract is invoked to restrain competition.  *See* Bus. & Prof. Code § 16600.  Because the

7   public policy protected by "section 16600 was adopted for a public reason," it cannot be waived

8   by contract.  *Weber, Lipshie & Co. v. Christian*, 52 Cal. App. 4th 645, 659 (1997) (quoting Civil

9   Code section 3513).  It follows that neither Kiland's claim under Labor Code section 970, nor

10  Plaintiffs' claims under Business and Professions Code sections 16600 and 17200, should be

11  subject to Boston Scientific's Minnesota choice-of forum/choice-of-law arguments.

12          **3.      Even Were Minnesota the Chosen Forum for Some Claims, All**

13                  **Claims Should be Heard in the Northern District of California, the**

14                  **First-Filed Court, so as to Avoid Splitting the Action**

15      Even if one were to conclude that the Minnesota forum selection clause applied to some of

16  the claims filed here or in Minnesota, the entire dispute between the parties should still,

17  nonetheless, proceed in California.  Under principles of judicial economy and comity, the case

18  should not be split; it should proceed in the first-filed forum.

19      In *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848 (8th Cir.

20  1986), the Eighth Circuit declined to transfer a matter to the court in the forum selected by a

21  clause that applied to some, but not all the claims.  *See id.* at 852.  In finding that the "suit is

22  broader than the clause" and for this reason declining to enforce it even to the extent it applied, the

23  court stated:  "Absent the strong policy of [a mandatory federal statute, such as] the Arbitration

24  Act, we see no reason to require piecemeal resolution of this case."  *Id.*  The Court thus upheld the

25  case remaining where filed.  *Id.*  The reasoning in *Farmland* was further explained in *Pegasus*,

26  where the court explained, "where a plaintiff's suit is truly broader than the forum selection clause

27  and the structure of the complaint is not an attempt to avoid the forum selection clause,

28  enforcement of the forum selection clause would be unreasonable."  152 F.R.D. at 577.

1    This rule against slitting a case has been followed by courts in this Circuit.  *See, e.g.,*

2    *Vision Tech. Design & Mfg., Inc. v. General Wire Spring Co.*, No. CV-F-07-412 OWW, 2007 WL

3    2069945 (E.D. Cal. July 17, 2007).  In *Vision*, the court declined to enforce a forum selection

4    clause where only some of the claims were based on breach of purchases orders that contained a

5    forum selection clause, when one other claim was based on a "broader" arrangement that was not

6    covered.   Because that claim was "validly brought in the Eastern District of California,

7    enforcement of the forum selection clause is unreasonable."  *Vision*, 2007 WL 2069945 at *7-8.;

8    *see also Frigate Ltd. v. Damia*, No. C 06-04734 CRB, 2007 WL 127996 (N.D. Cal. Jan. 12, 2007)

9    (court refused to enforce forum selection clause where it would result in multiple proceedings over

10   related claims, and one case could have preclusive effect over the other).

11   Combining the reasoning of these cases with the first-filed rule, ***even if*** there was a

12   singular valid forum selection clause (which there is not) designating Minnesota as the ***sole*** forum

13   of choice (which it is not) for some of the claims filed here or in Minnesota, because St. Jude and

14   Kiland have contractual and non-contractual claims for which ***California*** is both a proper and the

15   contractually designated forum, those claims remain properly filed in California, and the

16   duplicative second-filed claims raised in Minnesota should be dealt with here as well.

### 4.    No Exception to the First-to-File Rule Applies

### a.    This Action Was Properly Filed

19   Boston Scientific has attempted to posture Kiland and St. Jude's first-filed action as an

20   anticipatory suit, filed in bad faith or as a product of forum shopping.  As this Court has held,

21   however, the mere filing an action during a dispute does not mean that the action falls within any

22   such exception.  *Intersearch*, 544 F. Supp.2d at 960-62.  To be considered "anticipatory," for

23   example, the plaintiff must have "filed suit on receipt of specific, concrete indications that a suit

24   by the defendant was imminent.'"  *Id.* at 960.

25   Here, Boston Scientific had more than **two months** to bring an action *after* Kiland

26   provided it written confirmation on July 2, 2010 that the Employment Agreement was terminated.

27   Kiland and St. Jude did not file this action until September 13, 2010.  It is, and remains, apparent

28   that Kiland was under no imminent threat of litigation.  He had complete defenses to Boston

1   Scientific's claim for breach of contract.  Boston Scientific also suffered no cognizable damages

2   due to any alleged breach by Kiland.

3       Moreover, Kiland and St. Jude have filed substantive claims for damages and injunctive

4   relief.[12]  Thus, they stand in the same position as the first-filed plaintiff in *Intersearch*.  Kiland and

5   St. Jude did not improperly race Boston Scientific to the courthouse.  Rather, Kiland and St. Jude

6   filed their claims in the forum of their choice, which is the forum that has the most interest in the

7   parties' dispute, the forum that has the most significant contacts, and the forum that was expressly

8   authorized as an appropriate forum by the Employment Agreement drafted by Boston Scientific.

9               **b.      Both Actions Are Similarly Postured**

10      In a last-ditch effort to avoid the first-to-file rule, Boston Scientific attempts to parlay its

11  improper filing of a duplicative lawsuit and TRO motion (which was met by a motion seeking to

12  direct the proper forum issue to the correct court) into an argument that this Court should defer the

13  proper venue issue to the second-filed action because it, somehow, is further along.  This argument

14  lacks merit for two reasons.  First, both cases remain at the pleading stages and are similarly

15  postured waiting for this Court's ruling under the first-to-file rule.  Second, Boston Scientific's

16  argument is classic bootstrapping.  Boston Scientific cites BSC's own improper efforts to usurp

17  this Court's jurisdiction as purported evidence of the Minnesota action being further along.

18      **C.      AN INJUNCTION SHOULD ISSUE TO PROTECT KILAND'S RIGHT TO**

19              **CALL UPON FORMER CUSTOMERS AND COLLEAGUES**

20      In addition to issuing an anti-suit injunction, federal courts may enjoin enforcement of a

21  contract or proceedings in another state when either would "frustrate a policy of the forum issuing

22

23  _____

    [12]   Kiland has genuine claims against Boston Scientific for violating Labor Code § 970 and
24  Business and Professions Code §§ 16600 and 17200, and for fraud in the inducement and material
    breaches of contract that extend beyond Kiland's claims for declaratory relief.  Kiland notified
25  Boston Scientific of the basis for his claims *long before* the Employment Agreement terminated
    and Kiland obtained gainful employment in his profession with St. Jude.  Kiland was not required
26  to forever live and work under Boston Scientific's threats should he attempt to mitigate his harm
    and work in his profession.  Similarly, St. Jude has genuine claims against Boston Scientific for
27  unfair competition.  It is suffering ongoing injuries as a result of Boston Scientific's unfair and
    deceptive practices, as most sales representatives are too afraid to challenge Boston Scientific and
28  seek employment with a competitor, even though they, too, were defrauded into their employment
    contracts.  These claims are not pretextual or raised for an improper purpose.

the injunction." *Sun World, Inc. v. Lizarazu Olivaria,* 804 F. Supp. 1264, 1268 (E.D. Cal. 1992). In the employment context, the threat of harm to the employee's career arising from non-compete litigation in another state is sufficient to warrant immediate injunctive relief. *See, e.g., Robinson v. Jardine Ins. Brokers Inter'l Ltd.*, 856 F. Supp. 554, 559 (N.D. Ca. 1994).

Under Business and Professions Code section 16600 and the Employment Agreement, Kiland has the right to call upon former customers and colleagues after termination of his employment with Boston Scientific. *See Edwards,* 44 Cal.4[th] at 949 (holding that there are no exceptions to section 16600's "prohibition-against-restraint rule" in California employment contracts); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 576 (2009) (rejecting so-called trade secret exception). One purpose of this bright-line rule is to prevent litigation about post-employment restraints, and the resulting *de facto* enforcement if litigation were permitted to proceed. *See City Carpet-Beating, etc, Works v. Jones*, 102 Cal. 506, 511 (1894) (by "preventing litigation . . . the statute is wise and salutary"); *Application Group, Inc.,* 61 Cal. App. 4th at 901 (Bus. & Prof. Code § 16600 protects California employees and employers from "from anticompetitive conduct . . . including litigation based on a covenant not to compete . . . .").

Notwithstanding Kiland's rights as a California employee under section 16600, Boston Scientific has tried to coerce Kiland from working for a competitor after his employment terminated. Boston Scientific told Kiland that he could not work for a competitor until December 12, 2012, without subjecting his new employer to litigation under the Employment Agreement. Kiland Decl. ¶ 10, Malynn Decl., Ex. B. Months after Kiland stopped working for Boston Scientific, and in response to Kiland's lawsuit against Boston Scientific, BSC filed its duplicative action in Minnesota and moved, not only for an anti-suit TRO, but also for an injunction prohibiting St. Jude from "interfering" with the Employment Agreement. *Id.* ¶ 14.

The Employment Agreement also includes a broad "no-hire"/employee non-solicitation provision. This provision prohibits Kiland from hiring or soliciting "(i) any individual who is an employee or consulting of Boston Scientific or (ii) any individual who was an employee or consultant of Boston Scientific during the six (6) months period preceding the Employee's last

1  date of employment with Boston Scientific, unless the individual was laid off by Boston Scientific

2  . . . ."  Boston Scientific Agreement ¶ 7, FAC Ex. 6 [Dkt. #9].

3  Because both the threat of non-compete litigation[13] and the inclusion of an invalid restraint

4  in a California employment contract[14] violates Plaintiffs' rights under Business and Professions

5  Code section 16600,[15] an injunction should issue to protect Kiland's rights and avoid irreparable

6  harm to his career.  That Kiland allegedly breached his agreement is immaterial.  Boston

7  Scientific's Employment Agreement confirmed that Kiland could work for a competitor after his

8  employment terminated for whatever reason.  Moreover, "a contract to perform personal services

9  cannot be specifically enforced . . . ."  *Robert Barndt, Jr. v. County of Los Angeles,* 211 Cal. App.

10  3rd 397, 403 (1989).  "An unwilling employee cannot be compelled to continue to provide services

11  to his employer either by ordering specific performance . . . or by injunction.  To do so [would

12  run] afoul of the Thirteenth Amendment's prohibition against involuntary servitude."  *Beverly*

13  *Glen Music, Inc. v. Warner Communications, Inc.,* 178 Cal. App. 3d 1142, 1144 (1986).

14  **V.    CONCLUSION**

15  In light of the above and foregoing, Plaintiffs' Motion for a Preliminary Injunction should

16  be granted.

17  Dated:  October 12, 2010                       FELDMAN GALE, P.A.
                                                   TODD M. MALYNN
18

19                                      By:    /s/ Todd M. Malynn
20                                             Todd M. Malynn
                                               FELDMAN GALE PA
                                               880 W. 1st Street, Ste. #315
21                                             Los Angeles, California  90012
                                               Attorneys for Plaintiff St. Jude
22                                             Medical S.C., Inc.

23

24  **13**  *See Herzog v. "A" Co.,* 138 Cal. App. 3d 656, 660 (1982) (letter threatening to enforce contract to restrain competition by former employee is not privileged but unlawful).

25  **14**  While narrowly tailored "no hire"/employee non-solicitation provisions were facially valid
26  prior to *Edwards*, overly broad restraints that purport to prohibit a former employee from hiring or soliciting an employee with whom he had no prior contact, who worked in an entirely different region, or who was not even an employee when the former employee quit are overly broad and
27  void under section 16600.  *See VL Systems, Inc. v. Unisen, Inc.,* 152 Cal. App. 4th 708, 715 (2007) (pre-*Edwards* decision holding that overly broad "no-hire" provision violated section 16600).
28  **15**  *See D'Sa,* 85 Cal. App. 4th at 933; *Application Group, Inc.,* 61 Cal. App. 4th at 908.

1

2   Dated:  October 12, 2010                    THE MICLEAN LAW GROUP
                                                DAVID J. MICLEAN
3

4                                   By:    /s/ David J. Miclean _____
5                                          David J. Miclean
                                           THE MICLEAN LAW GROUP
6                                          303 Twin Dolphin Dr., Ste. 600
                                           Redwood Shores, California  94065
7                                          Attorneys for Plaintiff Blair Kiland

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1

## <u>CERTIFICATE OF SERVICE</u>

2

The undersigned hereby certifies that all the counsel of record who are deemed to have

3 consented to electronic service are being served with a copy of PLAINTIFF'S NOTICE OF

4 MOTION AND MOTION FOR A PRELIMINARY INJUNCTION; MEMORANDUM OF

5 POINTS AND AUTHORITIES via the Court's CM/ECF system per Local Rule CV-5(a)(3) on

6 October 12, 2010.

7

8

9

      /s/Todd M. Malynn
Todd M. Malynn
10  FELDMAN GALE PA
880 W. 1st Street, Ste. #315
11  Los Angeles, California  90012
Attorneys for Plaintiff St. Jude
12  Medical S.C., Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28