1   TODD M. MALYNN (SBN 181595)
    Email: tmalynn@feldmangale.com
2   JAMES A. GALE (FL Bar. No. 371726)
    Email: JGale@FeldmanGale.com
3   **FELDMAN GALE, P.A.**
    880 West First Street, Suite 315
4   Los Angeles, California 90012
    Telephone No.  (213) 625-5992
5   Facsimile No.  (213) 625-5993

6   Attorneys for Plaintiff St. Jude
    Medical S.C., Inc.
7
    DAVID J. MICLEAN (SBN 115098)
8   Email:  dmiclean@micleanlaw.com
    **THE MICLEAN LAW GROUP**
9   303 Twin Dolphin Dr., Suite 600
    Redwood Shores, California 94065
10  Telephone No.  (650) 684-1181
    Facsimile No.  (650) 684-1182
11
    Attorneys for Plaintiff Blair Kiland
12

13              **IN THE UNITED STATES DISTRICT COURT**

14          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

15  BLAIR KILAND and ST. JUDE            )  CASE NO. CV 10-4105 SBA
    MEDICAL S.C., INC.                   )
16                                       )  **PLAINTIFFS' OPPOSITION TO (A)**
            Plaintiff,                   )  **DEFENDANTS' MOTION TO STAY**
17                                       )  **PLAINTFFS' ACTION AND (B)**
        v.                               )  **DEFENDANTS' MOTION TO DISMISS**
18                                       )  **PLAINTIFFS' ACTION FOR IMPROPER**
    BOSTON SCIENTIFIC CORPORATION        )  **VENUE**
19  and GUIDANT SALES CORPORATION        )
    and DOES 1 through 50 INCLUSIVE      )  Date:   December 7,  2010
20                                       )  Time:   1:00 p.m.
            Defendants.                  )  Ctrm:   1, 4th Floor
21                                       )  Judge:  Hon. Saundra Brown Armstrong
                                         )
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

      A.    The Stay Motion .......................................................................... 1

      B.    The Venue Motion ....................................................................... 3

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY .......................... 8

III.  DISCUSSION ............................................................................................... 8

      A.    DEEEFENDANTS' STAY MOTION SHOULD BE DENIED BECAUSE
            IT IS CONTRARY TO THE FIRST-TO-FILE RULE, AND IS NOW
            RENDERED MOOT BY THE MINNESOTA COURT'S NOVEMBER
            12 ORDER ................................................................................... 8

      B.    DEFENDANTS' VENUE MOTION SHOULD BE DENIED FOR
            MULTIPLE REASONS, MANY OF WHICH DEFENDANT FAILS
            EVEN TO ADDRESS ..................................................................... 9

            1.    The Guidant And Boston Scientific Agreements Are Two Parts Of
                  One Expressly Integrated Employment Agreement, Which
                  Expressly Authorizes Kiland's Lawsuit In California. ............................. 10

            2.    Even If Express Integration Were Not Enough, By Itself, To
                  Provide Kiland Alternative Choices Of Forum, The Direct
                  Relationship Between The Boston Scientific Agreement And This
                  Action Would Clinch The Propriety Of Venue In California. ................... 14

            3.    Venue In California Is Proper Because This Action Was Filed To
                  Vindicate California's Non-Waivable Public Policies, Manifested
                  In Labor Code § 970 And Bus. & Prof. Code § 16600, Which
                  Were Adopted For A Public Reason ........................................................ 17

            4.    It Would Be Unreasonable To Enforce The Minnesota Forum
                  Selection Clause For Additional Reasons. ............................................. 18

IV.   CONCLUSION .......................................................................................... 20

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

4   *American Greetings Corp. v. Cookie Jar Entertainment, Inc.*, No. 1:09-CV-1056,
     2009 WL 3713686 (N.D.Ohio Nov. 3, 2009) ................................................ 9

5   *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881 (1998)................................ 19

6   *B&O Manufacturing, Inc. v. Home Depot U.S.A., Inc.*, No. C 07-02864 JSW, 2007
     WL 3232276 (N.D.Cal. Nov. 1, 2007) ................................................ 10

7

8   *Boyd v. Oscar Fisher Co.*, 210 Cal. App. 3d 368 (1989) ................................................ 11

9   *D'Sa v. Playhut, Inc.*, 85 Cal. App. 4th 927(2000) ................................................ 19

10  *Doe I v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) ................................................ 20

11  *Edwards v. Arthur Anderson LLP*, 44 Cal.4th 937 (2008)................................................ 6, 19

12  *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848 (8th Cir.
     1986)................................................ 15

13  *Gentry v. Sup. Ct.*, 42 Cal.4th 443 (2007)................................................ 19

14  *Global Satellite Communication Company v. Starmill U.K. Ltd.*, 378 F. 3d 1269
     (11th Cir. 2004) ................................................ 13

15

16  *Hall v. Superior Court*, 150 Cal. App. 3d 411 (1983)................................................ 20

17  *Herzog v. "A" Co.*, 138 Cal. App. 3d 656 (1982) ................................................ 19

18  *In re American Continental Corporation/Lincoln Sav. & Loan Securities Litigation*,
     102 F.3d 1524 (9th Cir. 1996)................................................ 8

19  *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949 (N.D.
     Cal. 2008) ................................................ 8

20

21  *Mayers v. Loew's Inc.*, 35 Cal.2d 832 (1950) ................................................ 11

22  *Mercuro v. Superior Court*, 96 Cal. App. 4th 167 (1982)................................................ 19

23  *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614 (1985)................................................ 19

24  *Northwest Airlines, Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d
     1002 (8th Cir. 1993) ................................................ 9

25  *Pegasus Trans., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574 (N.D. Ill. 1993)................................................ 15

26  *Poponin v. Virtual Pro, Inc.*, 2006 WL 2691418 (N.D.Cal.) (J. Hamilton)................................................ 14

27  *Public School Retirement System of Missouri v. State Street Bank and Trust
     Company*, No. 09-4214-CV-C-NKL, 2010 WL 318538 (W. D. Mo. Jan. 21,
     2010)................................................ 12

28

*Reigelsperger v. Siller,* 40 Cal.4[th] 574 (2007)................................................................ 11

*Swinden v. Vanguard Group, Inc.*, 2009 WL 3415376 (N.D.Cal.) (J. Illston) ............................ 14

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997) ................................. 12

*Vision Tech. Design & Mfg., Inc. v. General Wire Spring Co.*, 2007 WL 2069945
   (E.D. Cal. July 17, 2007)................................................................................................. 15

## California Statutes

Business & Professions Code § 16600 .................................................................. passim

Business & Professions Code § 17200.................................................................. passim

Civil Code § 1642 ........................................................................................... 11, 13

Civil Code § 1668 ............................................................................................ 7, 18

Civil Code § 3513 ............................................................................................ 7, 18

Labor Code & 970........................................................................................... passim

Labor Code § 971 ................................................................................................ 17

Labor Code §, 972 ............................................................................................... 17

1

## I.      **INTRODUCTION**

2      Plaintiffs Blair Kiland ("Kiland") and St. Jude Medical, S.C., Inc. ("St. Jude")

3 (collectively, "Plaintiffs") herein oppose two motions filed by Defendants Boston Scientific

4 Corporation ("BSC") and Guidant Sales Corporation ("Guidant") (collectively, "Boston

5 Scientific").   The common objective of Boston Scientific's motions is to disrupt this Court's

6 proper jurisdiction over the first-filed action and permit its more limited case to proceed in

7 Minnesota instead.   The motions should be denied and this case should remain here in California

8 because: (a) Kiland's claims fall squarely within the purview of a California forum-selection

9 clause; (b) California has a materially greater interest in adjudicating this case which involves

10 California based claims and statutes; and (c) for numerous reasons it would be unreasonable to

11 deny Kiland and St. Jude their choice of forum in which to litigate their California-based claims.

12      **A.      The Stay Motion**

13      The first of the two motions is Defendants' Motion to Stay Action (the "Stay Motion"),

14 which, in addition to being meritless, is now moot.   When filed, it was predicated upon the notion

15 that the second-filed Minnesota action (which BSC did not commence until September 24, 2010[1])

16 "ha[d] already proceeded rapidly" and that a November 19, 2010 hearing *was then* set before the

17 Minnesota court on: (a) BSC's motion requesting that the Minnesota court issue an anti-suit

18 injunction directed against this action, and (b) a motion to dismiss, stay or transfer the Minnesota

19 action, wherein St. Jude and Kiland asked the Minnesota court to defer to this Court as to all

20 issues, including venue issues, under the first-to-file rule.   The so-called "rapid" start in the

21 Minnesota court was, however, merely illusory, having resulted from BSC's own canard.

22 Specifically, BSC had obtained an "emergency" TRO hearing in the Minnesota action on

23 September 30 by withholding material facts from the Minnesota court.   After Plaintiffs alerted the

24 Minnesota court to BSC's material omissions, however, the Minnesota court realized that its initial

25 impressions were incorrect, and that there was no exigency justifying an anti-suit TRO in any

26 event.   During the September 30 hearing, the Minnesota court expressed an inclination to follow

27

28

---

[1]    Guidant is not a party in the second-filed Minnesota action.

1  the first-to-file rule and defer to this Court.  It thereupon set the November 19 hearing on the

2  parties' respective motions under the supposition that this Court would have an opportunity to

3  hear the venue issues and otherwise take appropriate action before that time.

4         On October 5, 2010, however, Defendants—rather than present the venue issues to this

5  Court—filed their Stay Motion and noticed the hearing for December 7, 2010 (*after* the *then*

6  scheduled hearing on November 19 in Minnesota) and did *not* even seek to advance it.   In

7  Plaintiffs' view, Defendants thus ignored what the Minnesota court had said on September 30.

8  Accordingly, on October 12, 2010, Plaintiffs filed their Motion for Preliminary Injunction, which

9  addressed the venue issues presented in this case, and promptly moved to advance the hearing on

10 that motion from December 14, 2010 to a date before November 19.  In doing so, Plaintiffs alerted

11 this Court to their intention to also move to continue the November 19 hearing in the second-filed

12 Minnesota action in case this Court was not in a position to advance the hearing on their Motion

13 for Preliminary Injunction as requested.  Plaintiffs moved to continue the November 19 hearing in

14 Minnesota on October 21, 2010.  In the meantime, Defendants—predictably, albeit for the wrong

15 reasons—opposed Plaintiffs' motion to advance the hearing here.[2]

16        On October 26, 2010, this Court entered an Order declining to advance the hearing on

17 Plaintiffs' pending Motion for Preliminary Injunction as Plaintiffs requested, but in that Order: (a)

18 noted Plaintiffs' stated intention to file a motion to continue the November 19 hearing in case the

19 preliminary injunction hearing was not advanced as requested; (b) expedited the briefing on

20 Plaintiffs' pending motion—effectively coordinating the briefing on the parties' respective

21 motions; and (c) noted the possibility that this Court might rule on the papers or advance the

22 hearing on Plaintiffs' preliminary injunction motion.  *See* October 26, 2010 Order [DE 38] at 2.

23        On November 5, 2010, BSC opposed Plaintiffs' *then* pending motion for a continuance in

24 Minnesota.  In addition to referring to its conclusory argument that Plaintiffs had improperly filed

25 their lawsuit in California, BSC ignored the above-referenced particulars of this Court's October

26

27 [2]   One day later, Defendants filed their Motion to Dismiss Plaintiffs' Action for Improper Venue
   [DE 34] (the "Venue Motion"), wherein they seek to dismiss this first-filed action by selectively
28 raising *some of the venue issues* now before this Court, and requested permission to re-notice the
   hearing on that motion for December 7, 2010, which was permitted.

1  26th Order.  Instead, BSC sought to exploit the mere fact that this Court declined to advance the

2  preliminary injunction hearing by arguing that this Court had declined to "take ownership of the

3  parties' dispute."  Specifically, BSC represented to the Minnesota court:

4          Only one thing has changed since this Court's decision to schedule its
        November 19, 2010 hearing: *the California Court was given the opportunity*
5        *to take ownership of the parties' dispute, and declined to do so*.  [BSC's
        Memorandum Opposing Defendants' Motion for a Continuance at 1, Exhibit
6        ("Ex.") "1" to the Declaration of Todd M. Malynn ("Malynn Opp. Decl.").]

7          The Minnesota court disagreed with BSC's assessment of the case and opted to follow the

8  first-to-file rule.  **On November 12, 2010, the Minnesota court entered an order continuing**

9  **the November 19 hearing**.  *See* Minn DE 45, Malynn Opp. Decl. Ex. B.  The November 12 Order

10  confirmed Plaintiffs' understanding of the Minnesota court's inclination to follow the first-to-file

11  rule, as the Minnesota court conveyed during the September 30 TRO hearing. In the November 12

12  Order, the Minnesota court remarks:  "[St. Jude and Kiland's] argument that California is a proper

13  forum for this action may have merit . . ." and defers to this Court.  *Id.* at 1.  The November 12

14  Order, moreover, did *not* reset the hearing on the motions that had been set for November 19.

15  Hence, Defendants' Stay Motion—*in addition to running afoul the first-to-file rule, which directs*

16  *venue issues to this first-filed Court*—**is now rendered moot by the Minnesota court's**

17  **November 12 order deferring to this Court under the first-to-file rule.**

18          **B.      The Venue Motion**

19          The second motion herein opposed is Defendants' Motion to Dismiss Plaintiffs' Action for

20  Improper Venue filed on October 22, 2010.   BSC commenced the second-filed action in

21  Minnesota and moved for an "emergency" anti-suit TRO, and Defendants likewise filed their Stay

22  Motion and Venue Motion here, for an obvious reason:  Defendants perceive and seek an

23  advantage in litigating in Minnesota, where they want to defend their conduct and invoke a

24  Minnesota choice-of-law clause (one of two in the Employment Agreement).  Boston Scientific

25  hopes to litigate in Minnesota Plaintiffs' claims under California Labor Code section 970 and

26  Business and Professions Code sections 16600 and 17200, as well as Plaintiffs' claims for

27  declaratory relief that Kiland had the right to work for a competitor, and St. Jude had the right to

28  employ Kiland, pursuant to the terms of his Employment Agreement.

Defendants' Venue Motion is predicated upon the utter fiction that this action is **solely** governed by the forum-selection provision within one part of the employment agreement between Kiland and Guidant, a wholly owned subsidiary of BSC (the "Guidant Agreement"), to which Defendants self-servingly refer as the "Kiland Agreement."  *See* Venue Motion at 2 and 10 [DE 34] ("The only relevant forum-selection clause chooses Minnesota.").   The entire employment agreement between Kiland, as employee, and Boston Scientific, as employer,[3] however, is actually and expressly composed of **two documents**—the Guidant Agreement **and** the contemporaneously signed Boston Scientific Corporation Agreement Concerning Employment for U.S. Employees (the "Boston Scientific Agreement"), which Defendants self-servingly describe as a "standard company-wide trade secrets and proprietary information agreement" and refer to as the "U.S. Employee Agreement."   *Id.* Pursuant to the integration clause in the Guidant Agreement, those two documents constitute the "entire agreement" between Kiland and Boston Scientific:

> This Agreement [The Guidant Agreement] and the Boston Scientific Corporation Agreement Concerning Employment for U.S. Employees [The Boston Scientific Agreement] signed by Employee simultaneously with this Agreement **constitutes the entire Agreement between the parties with respect to Employee's employment with GSC** . . .

Guidant Agreement ¶ 16, FAC, Ex. 3 [DE 9] (emphasis added).   Plaintiffs' Complaint and First Amended Complaint in this action thus expressly refer to **both** the Guidant Agreement and the Boston Scientific Agreement as components of Kiland's "entire" Employment Agreement (singular) with Boston Scientific as expressly stated in their contract.

That "entire agreement" contains two forum-selection clauses that collectively designate three alternative venues in which to litigate disputes.   One of those venues is California, which is where Kiland was employed by Boston Scientific, where the dispute between the parties arose, and where there are specific statutes governing the rights and obligations of each of the parties in this case.   The forum-selection provision within the Boston Scientific Agreement, which designates California, provides:

---

[3]   The Guidant Agreement identified Kiland's employer as BSC's wholly owned subsidiary, Guidant, while the Boston Scientific Agreement identified Kiland's employer as BSC, the party that sued Kiland in Minnesota, or any affiliated subsidiary.   *See* Plaintiffs' First Amended Complaint ("FAC"), Exhibits 3 & 5 thereto.

> Both parties agree that any action **concerning this Agreement** shall be commenced exclusively in the courts (including the Federal Courts in either: . . . or (ii) the state of Employee's last (or, if still employed, current) **primary work location for [Boston Scientific].**

Boston Scientific Agreement ¶ 18, FAC, Ex. 5 [DE 9] (emphasis added).  The express integration of this forum-selection clause into the "entire" agreement between Kiland and Defendants, **by itself**, debunks the notion that the Minnesota forum-selection clause in another part of the Employment Agreement exclusively governs this action, as Defendants erroneously contend.

Even if the express integration were not enough, by itself, to overcome Defendants' argument that Plaintiffs are trying to "conflate" two agreements, the direct relationship between the Boston Scientific Agreement and this action easily makes California a clear and proper choice of forum for a simple reason:  Kiland's claims against Boston Scientific concern the Boston Scientific Agreement, which expressly governs Kiland's post-employment rights and obligations, and includes the express recognition of Kiland's right to work for a competitor after the termination of his employment with Boston Scientific, "regardless of reason for termination."[4]

Defendants try to duck the Boston Scientific Agreement and its forum-selection provision designating California by hyperbolizing that Plaintiffs "try to confuse matters . . . by conflating the [Guidant] Agreement with the separate—and irrelevant—[Boston Scientific] Agreement," and that "[t]he [Boston Scientific] Agreement is not at issue between the parties, and no party claims that Kiland (or anyone else) has breached that contract." Venue Motion [DE 34] at 9.  Notwithstanding Defendants' self-serving proclamations, the Boston Scientific Agreement is not only "relevant" (which would be more than enough), but actually has everything to do with this action.

The Boston Scientific Agreement is not just a "proprietary information and trade secrets agreement," as Defendants seek to classify it.  *Id.* at 1.  It expressly included nationwide, industry-specific non-compete restraints prohibiting Kiland from post-employment competition against Boston Scientific, including the solicitation of former customers and colleagues.  Such restraints

---

[4]    Boston Scientific Agreement ¶¶ 5(d) & Attachment A (State Law Modifications to the Boston Scientific Agreement), FAC Exs. 5 & 6 [DE 9].

1    are, however, unlawful in California.[5]  Thus, in deference to California law and public policy,

2    Attachment "A" to the Boston Scientific Agreement expressly eliminated two of the unlawful

3    restraints (the non-compete and customer non-solicitation provision but not the employee non-

4    solicitation provision) as to California employees (such as Kiland).

5         Plaintiffs filed this action on September 13 as a direct result of Boston Scientific's express

6    refusal to honor its express recognition of Kiland's rights as one of its former California

7    employees to work for a competitor and to solicit former customers after his employment

8    terminated.  Specifically, in a July 7, 2010 email to Kiland's counsel after Kiland's Employment

9    Agreement was terminated, Boston Scientific threatened to seek "equitable relief" prohibiting

10   Kiland from working for "any company in the CRM industry" until December 21, 2012 (the

11   expiration of his Employment Agreement),[6] thus crystallizing the dispute that led to the assertion

12   of Plaintiffs' California claims here two months later, after St. Jude employed Kiland.  Inasmuch

13   as Defendants could not possibly deny the unambiguous elimination of a non-compete restraint as

14   to California employees within the aforesaid Attachment "A" to the Boston Scientific Agreement,

15   Boston Scientific sought to restrain the very competition permitted by that agreement by

16   threatening to enforce the term-of-years provision in the Guidant Agreement as if it were a non-

17   compete restraint.[7]  So, while Kiland asserts a number of claims to vindicate his right to work in

18   his profession for a competitor and to recover damages against Boston Scientific, all of his claims

19   necessarily concern the Boston Scientific Agreement, which expressly recognizes in its

20   Attachment "A" Kiland's right to work for a competitor and to solicit customers (notwithstanding

21   the term-of-years provision) in deference to California law and strong public policies.[8]

22

23   _____
     [5]    *Id,* ¶¶ 6-8, FAC, Ex. 5 [DE 9]; *Edwards v. Arthur Anderson LLP,* 44 Cal.4th 937, 949 (2008)
24   (discussing California's "prohibition-against-restraint rule" in California employment contracts).

     [6]    *See* Exhibit "B" to the Declaration of Blair Kiland ("Kiland Decl."), which is attached as
25   Exhibit B to the Declaration of Todd M. Malynn ("Malynn Decl.") filed in support of Plaintiffs'
     pending Motion for a Preliminary Injunction [DE 21].
26
     [7]    Boston Scientific did not sue Kiland for breach of contract after Kiland confirmed the
27   automatic termination of his Employment Agreement on July 2, 2010.  Boston Scientific only
     sought to restrain Kiland from working for a competitor in CRM sales, his chosen profession.

28   [8]    Unable to deny this basic point, Defendants attempt to defuse it by coyly acknowledging
     Attachment "A" to the Boston Scientific Agreement, and arguing that "no such post-employment

Beyond the integration of the Boston Scientific Agreement and its California forum-selection clause, and beyond the direct relationship between the Boston Scientific Agreement and this action, venue is proper in California because: (a) California has a materially greater interest in this dispute (Kiland was employed by Boston Scientific in California, and was fraudulently induced by Boston Scientific to relocate to this State), and (b) this action was filed to vindicate California's strong public policies manifested in Labor Code § 970 and Business & Professions Code §§ 16600, 17200.  Moreover, inasmuch as the Guidant Agreement includes *both* a foreign forum-selection provision *and* a foreign choice-of-law clause, such clauses operate in tandem to risk a "waiver" of California's strong public policies, which, by statute (Civil Code §§ 1668, 3513), cannot be waived by a California employee.  Therefore, it would be unreasonable to enforce the foreign forum selection clause selectively invoked by Boston Scientific.

Finally, even if the Guidant Agreement somehow could govern one or more of Kiland's claims to the exclusion of the Boston Scientific Agreement, it would still be unreasonable to enforce its Minnesota forum-selection provision for three additional reasons—none of which are covered in the Venue Motion, but which are additional grounds in support of Plaintiffs' Motion for a Preliminary Injunction.  First, St. Jude did not sign any forum selection clause, and it has a due process right to litigate its unfair competition claim against Boston Scientific in California, the forum of its choice.  Second, enforcement of the Minnesota forum-selection clause would result in "claim splitting," and would be an inefficient use of judicial resources, because the California forum selection clause plainly governs the parties' respective claims for "equitable relief" here and in Minnesota seeking to enforce alleged post-employment rights and obligations.  Third, Boston Scientific's fraud in inducement would make it unreasonable to enforce the Guidant Agreement, including but not limited to the forum selection provision in the Guidant Agreement.

For all of these above reasons, Defendants' Venue Motion should be denied.

---

restraints exist."  *See* Venue Motion [DE 34] at 5 n. 10.  However, Defendants' numerous actions to restrain competition by Kiland, including its July 7th threat and others, speak much louder than their current words.  Moreover, the Employment Agreement still includes an unlawful restraint that Plaintiffs seek in this action to declare void under California law.  *See* FAC ¶¶ 35-36 [DE 9].

II.     **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

In light of the Court's October 26, 2010 Order expediting and coordinating the briefing on Plaintiffs' pending Motion for Preliminary Injunction, which the Court indicated it might advance to December 7, 2010 or rule upon without a hearing, Plaintiffs respectfully refer to and do not repeat, but expressly incorporate into this Opposition, the Statement of Facts and Procedural History in support of their Motion for Preliminary Injunction, as supplemented above.

III.    **DISCUSSION**

   A.   **DEEEFENDANTS' STAY MOTION SHOULD BE DENIED BECAUSE IT IS CONTRARY TO THE FIRST-TO-FILE RULE, AND IS NOW RENDERED MOOT BY THE MINNESOTA COURT'S NOVEMBER 12 ORDER**

BSC's rush to file the second-filed Minnesota action, two months after Kiland's employment with Boston Scientific automatically terminated pursuant to the terms of his agreement, followed by BSC's effort to have the Minnesota court usurp this Court's jurisdiction over this case by seeking an emergency TRO (which the Minnesota court rebuffed upon realizing it was a latent non-starter), was ***never*** a valid basis to stay this action and override Plaintiffs' choice to litigate this case, including any venue issues, in California.  *See In re American Continental Corporation/Lincoln Sav. & Loan Securities Litigation,* 102 F.3d 1524, 1545 (9th Cir. 1996) ("strong presumption that plaintiff's choice of forum will not be disturbed").  As this Court has stated, "'there is a strong presumption . . . that favors the forum of the first-filed suit under the first-to-file rule.'"  *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949, 957 (N.D. Cal. 2008) (citation omitted).  "The prevailing standard is that 'in the absence of compelling circumstances' the first-to-file rule should apply."  *Northwest Airlines*, *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993) (citations omitted).

Furthermore, Defendants' Stay Motion is now moot in any event.  As noted, on November 12, the Minnesota court continued the November 19 hearing in Minnesota despite BSC's protestations and BSC's fallacious contention that this Court had declined to "take ownership of the parties' dispute."  In its November 12 Order, moreover, the Minnesota court deferred to this Court under the first-to-file rule—noting that "[St. Jude and Kiland's] argument that California is a proper forum for this action may have merit . . . ."  November 12, 2010 Order, Malynn Opp.

1   Decl. Ex. B.  By continuing the November 19 hearing and deferring to this Court, the Minnesota

2   court has effectively stayed the second-filed Minnesota action to allow this Court to address the

3   motions now pending before it, which comports with the inclinations that the Minnesota court

4   originally expressed at the September 30 TRO hearing in Minnesota but which Defendants have

5   steadfastly refused to honor or even acknowledge.  Hence, the Stay Motion must be denied.

6         **B.      DEFENDANTS' VENUE MOTION SHOULD BE DENIED FOR MULTIPLE
                     REASONS, MANY OF WHICH DEFENDANT FAILS EVEN TO ADDRESS**
7

8         Defendants' Venue Motion is predicated on numerous false assumptions tied to the notion

9   that only one of Kiland's two employment documents is "relevant" to the parties' dispute, and that

10  its Minnesota forum selection clause should override any other venue consideration, such as those

11  addressed in Plaintiffs' pending Motion for Preliminary Injunction.  Although it is not uncommon

12  that Courts have to construe related documents together and consider the effect, if any, of

13  inconsistent forum selection clauses, Defendants' Venue Motion does not discuss a single case

14  presenting this situation.  *See, e.g., American Greetings Corp. v. Cookie Jar Entertainment, Inc.,*

15  No. 1:09-CV-1056, 2009 WL 3713686, at *7 (N.D.Ohio Nov. 3, 2009) ("When confronted with

16  multiple forum selection clauses in various agreements" where no "clause governs the whole of

17  this dispute," courts should give "little if any weight" to them); *B&O Manufacturing, Inc. v. Home*

18  *Depot U.S.A., Inc.,* No. C 07-02864 JSW, 2007 WL 3232276, at *3 (N.D.Cal. Nov. 1, 2007) ("The

19  Court further finds that the two conflicting forum selection clauses in the contracts at issue

20  counteract one another, and thus, considered together do not weigh in favor of [either party]").

21        Instead, Defendants' Venue Motion is based on four unfounded positions in a futile

22  attempt to liken this case to one involving only a single, clearly applicable forum selection clause:

23        •   Unfounded Position No. 1 is Defendants' claim that the two operative
              employment documents are wholly separate agreements, when in reality
24            they are two parts of one expressly integrated "Employment Agreement"
              relating to Kiland's employment with Boston Scientific in California;
25

26        •   Unfounded Position No. 2 is Defendants' claim that the Boston Scientific
              Agreement is wholly "irrelevant" to this case, when Kiland and St. Jude's
27            complaint in California expressly and directly involves claims that concern
              the Boston Scientific Agreement;
28

- Unfounded Position No. 3 is Defendants' claim (to avoid obvious reference to the Boston Scientific Agreement with its California forum clause) that this second-filed action is not about restraining competition, but is just about "damages," which is contradicted by BSC's own pleadings and prayer for injunctive relief, its actions in trying to restrain competition, and the expressed statements by its in-house counsel; and

- Unfounded Position No. 4 is Defendants' erroneous assumption that it would be reasonable to enforce the Minnesota forum selection clause in one of the two relevant employment documents when that would (a) unreasonably result in "claim splitting" even under their proffered interpretation of the contracts, (b) unreasonably override California's materially greater interest in enforcing its own statutes and public policies governing Boston Scientific's employment of Kiland in California, (c) unreasonably override St. Jude's due process right to adjudicate its unfair competition claims against a competitor in a forum of its choice, and (d) unreasonably condone Boston Scientific's conduct in fraudulently inducing Kiland into the agreement in the first instance and denying the benefit of a California forum selection clause that plainly covers his claims.

    **1.    The Guidant And Boston Scientific Agreements Are Two Parts Of One Expressly Integrated Employment Agreement, Which Expressly Authorizes Kiland's Lawsuit In California.**

Under the employment agreement Boston Scientific drafted, which includes two documents with an integration clause expressly making them one agreement, there are three forums in which Kiland could bring an action. Because one of the forums is California, which is where Kiland lived and was employed by Boston Scientific, where their dispute arose, and where there are statutes governing their parties' rights and obligations, Boston Scientific's Venue Motion lacks merit. No matter how many times Boston Scientific uses the words "conflate" or "separate," it cannot escape the express language of its own drafted contract, which provides:

> This Agreement [The Guidant Agreement] and the Boston Scientific Corporation Agreement Concerning Employment for U.S. Employees [The Boston Scientific Agreement] signed by Employee simultaneously with this Agreement ***constitutes the entire Agreement between the parties with respect to Employee's employment with GSC*** . . .

Guidant Agreement ¶ 16, FAC Ex. 3 [DE 9] (emphasis added). This integration clause, which expressly refers to one "Agreement" between Kiland and Boston Scientific, is dispositive. Kiland and Boston Scientific did not enter into two "separate" and "independent" contracts, as Boston Scientific now argues (Venue Motion [DE 34] at 1, 9-10); but rather, they entered into one

1    integrated Employment Agreement, as the Guidant Agreement plainly states, and which Kiland

2    understood when he executed the agreement.  Kiland Decl. ¶ 6 [DE 14].

3         The required rule of construction, provided in California Civil Code § 1642 ("Several

4    contracts relating to the same matters, between the same parties, and made parties of substantially

5    one transaction, are to be taken together"), requires that the Guidant and Boston Scientific

6    Agreements be construed together as one contract.  *See Reigelsperger v. Siller,* 40 Cal.4th 574, 580

7    (2007); *Mayers v. Loew's Inc.,* 35 Cal.2d 832, 826-28 (1950) *Boyd v. Oscar Fisher Co.*, 210 Cal.

8    App. 3d 368, 378 (1989) (application of Civil Code § 1642 "presents a question of law" when here

9    is no conflicting evidence).   In sync with this sensible and required construction of the Kiland's

10   two employment documents, the Guidant Agreement (even beyond its alone-sufficient integration

11   clause) expressly interrelates its terms with the terms of the Boston Scientific Agreement:

12              ***As a condition of Employee's being employed by GSC***, ***as well as
               receiving guaranteed compensation and the protections of a term of
13             employment***, Employee and GSC enter into this Agreement ***and*** a Boston
               Scientific Corporation Agreement Concerning Employment for U.S.
14             Employees, the terms of which Employee and GSC acknowledge are
               reasonably and necessary for the protection of their legitimate interests.

15   Guidant Agreement at p. 1 (Recital "C"), FAC Ex. 3 [DE 9] (emphasis added).  The "benefits"

16   conferred by the Guidant Agreement, including the purported benefits of a term provision, which

17   turned out to be not only illusory, but also fraudulent in light of Boston Scientific's withholding of

18   material information regarding its upcoming criminal indictment and guilty plea and the fatally

19   defective nature of the ICDs Kiland was asked to sell, issues that came to light shortly after Kiland

20   began working in California, were ***expressly conditioned*** upon Kiland's execution of the Boston

21   Scientific Agreement, and thus were necessarily subject to Kiland's rights under that agreement.

22        The outcome that Boston Scientific is trying to avoid recently occurred in *Public School*

23   *Retirement System of Missouri v. State Street Bank and Trust Company*, No. 09-4214-CV-C-NKL,

24   2010 WL 318538 (W. D. Mo. Jan. 21, 2010), where the district court had inconsistent forum

25   selection clauses within several related agreements signed by the parties relating to a securities

26   lending program.  The court framed the issue as follows:

27              [I]in what forum should a case be heard where the dispute on the face of a
               petition draws upon three different agreements, two with ***conflicting forum
28             selection provisions*** and one with no forum selection provision?

*Id.* at \*2.  Because the agreements related to the same program, the court held that they "should be read together" as one contract.  *Id.* at \*3.  To help resolve the conflict, the court noted that consideration of any "forum selection clause is set against the notion that '***federal courts give considerable deference to [the original] choice of forum***."  *Id.* at \*2 (quoting *Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 695 (8th Cir. 1997) (emphasis added)).  "Also, 'when ordinary contract principles fail to elucidate a single reasonable interpretation for an ambiguous [forum selection clause], and instead the provision is subject to opposing yet reasonable interpretation, ***an interpretation is preferred which operates more strongly against' the drafter***."  *Id.* (quoting *Global Satellite Communication Company v. Starmill U.K. Ltd.,* 378 F. 3d 1269 (11th Cir. 2004)) (emphasis added).  Consistent with these principles and rules of construction, the court resolved the conflict against the "drafter" and remanded the case to the "first filed" forum.  *Id.* at \*4.  The same result is appropriate here.  The Guidant and Boston Scientific Agreements relate to the same subject matter (Kiland's employment with Boston Scientific) and should be construed together as one integrated agreement, as plainly stated by the document upon which Boston Scientific entirely relies.  The Court should resolve the ambiguity against Boston Scientific, which drafted the conflicting forum selection provisions, and in favor of the "first-filed" forum.[9]

Indeed, the most practical construction of the "entire agreement" and the two forum selection provisions therein, is to allow *any* employment-related dispute that may arise between Kiland and Boston Scientific to be litigated in *any* one of the three designated forums.  That is the only construction that provides any certainty, which is the purpose of a forum-selection provision.  It is far more practical and realistic than to construe the "entire agreement" as requiring an employee to parse issues before determining which provision might apply, when there is no real answer as the employer can always make an argument that the other provision controls for similar

---

[9]   It is noteworthy that the conflict at issue, which is one of Boston Scientific's own making, does not go away even if Kiland's expressly integrated employment agreement is torn apart into two separate contracts, contrary to the express intent of the parties.  That is because both the Guidant and Boston Scientific Agreements include broadly worded forum selection provisions that would still expressly cover disputes allegedly arising under the other agreement.  The contracts thus provide an employee a choice of alternative forums within which to bring an action.

1  reasons being advanced the other way, and where no one would know until a court resolved the

2  issue, creating uncertainty in virtually all cases or certainly in too many cases.

3      In reliance on two cases, *Swinden v. Vanguard Group, Inc.*, 2009 WL 3415376 (N.D.Cal.)

4  (J. Illston) and *Poponin v. Virtual Pro, Inc.*, 2006 WL 2691418 (N.D.Cal.) (J. Hamilton),

5  Defendants argue that Plaintiffs have misapplied Civil Code § 1642 and ignored precedent.  *See*

6  Venue Motion [DE 34] at 13-14.  However, upon inspection, Defendants' cited cases do not

7  support that accusation.  Instead, those cases are easily distinguishable.

8      In *Swinden*, the first and second agreements were signed *over four years apart*.  2009 WL

9  3415376 at *3.  Here, the Guidant and Boston Scientific Agreements were signed

10 contemporaneously with one another.  Also, in *Swinden*, the two agreements made *no reference to*

11 *each other at all*.  *Id.* at *4.  Here, the Guidant Agreement expressly incorporates the Boston

12 Scientific Agreement and, by Defendants' own admission, "specifically recognizes that Kiland

13 was also required to sign the [Boston Scientific] Agreement."  Venue Motion [DE 34] at 7.

14 Indeed, Defendants quote a clause wherein Kiland's employment was conditioned upon both

15 agreements and recognizes that both agreements are "necessary for the protection of their

16 legitimate interests."  *Id.*  Of course, one of Kiland's legitimate interests was and is to ensure that

17 the provisions of the Boston Scientific Agreement recognizing the invalidity of restraints on

18 competition in relation to California employees like Kiland are enforced—especially given

19 Defendants' post-employment attempts to restrict Kiland's right and ability to compete in his

20 chosen profession after his employment with Boston Scientific terminated.

21     Next, in *Poponin*, the two documents at issue included an agreement signed by both parties

22 and an assignment of patent rights, later signed by one of them.  *See* 2006 WL 2691418 at *1, 8.

23 The bilaterally signed agreement expressly stated that disputes arising in connection "*with the*

24 *present agreement*" would be sent to arbitration and did <u>not</u> incorporate by reference the

25 assignment.  *Id.* (emphasis added).  Rather, the bilateral agreement expressly stated an intent to the

26 contrary—that it "constitutes the sum total of the Agreement" with Dr. Poponin.  *Id.*  In contrast

27 here, the Guidant Agreement expressly states that both it and the "simultaneously" signed Boston

28

1    Scientific Agreement together "constitute the entire agreement between the parties."   (Guidant

2    Agreement ¶ 16 [DE 9].)   Consequently, Defendants' cited cases are factually inapposite.

3              **2.      Even If Express Integration Were Not Enough, By Itself, To Provide Kiland Alternative Choices Of Forum, The Direct Relationship Between The Boston Scientific Agreement And This Action Would Clinch The Propriety Of Venue In California.**

4

5

6        Even if the Court were to adopt Boston Scientific's argument and required parsing of

7    issues and a determination of whether an employment-related dispute were covered by one or both

8    or none of the forum selection clauses, Plaintiffs merely would need to establish that the issues

9    here overlap to avail themselves of the California forum-selection provision, or that the California-

10   based claims and/or St. Jude's claims are not controlled by the forum selection provision within

11   the Guidant Agreement, so as to avail themselves of the California forum, on authority of

12   *Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848 (8th Cir. 1986), *Pegasus*

13   *Trans., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574 (N.D. Ill. 1993), and *Vision Tech. Design*

14   *& Mfg., Inc. v. General Wire Spring Co.*, 2007 WL 2069945 (E.D. Cal. July 17, 2007), which

15   recognize the federal rule against "claim splitting" through the enforcement of a forum selection

16   clause.   Plaintiffs, however, can do even better, inasmuch as the Boston Scientific Agreement

     happens to bear directly upon the claims asserted in this action.

17

18       The Boston Scientific Agreement expressly defines and recognizes the rights and

19   obligations of both current and former Boston Scientific employees—*not just* with respect to

20   "trade secrets and proprietary information" as portrayed by Defendants in their Venue Motion (at

21   2)—*but also* with respect to *competition generally*, including the solicitation of former customers

22   and colleagues.   Post-employment competition is one of the *express subjects* of the Boston

     Scientific Agreement, and it is an *express subject* of the California Action.

23

24       After Kiland's Employment Agreement "automatically" terminated pursuant to its own

25   terms (*see* Guidant Agreement ¶ 9(f)), Boston Scientific did not sue Kiland for breach of the term-

26   of-years aspect of the Employment Agreement or otherwise.   It has no cognizable claim.[10]   Kiland

27   _____

28   [10]    Kiland repaid the pro-rated portion of his signing bonus and any other monies allegedly owed to Boston Scientific due to his departure, even though Kiland was under no obligation to return any monies for being fraudulently induced to enter into an agreement.   Kiland also was under no

has complete defenses to any alleged breach of contract.  And, even if there were a cognizable claim for breach of the term-of-years aspect of the Employment Agreement, Boston Scientific would not have any right to injunctive relief against Kiland for allegedly breaching such a personal services obligation, or against *any* new employer (including a competitor such as St. Jude) for allegedly inducing a breach of such a personal services obligation.

However, months before Defendants even commenced the first-filed California Action Boston Scientific betrayed its own mindset in connection with this dispute via a certain July 7, 2010 email to Kiland's counsel.  In that email, Boston Scientific contended that the "Employment Agreement" prevented Kiland from working for "any company in the CRM industry," and that Boston Scientific could seek "equitable relief" against its new employer:

> [U]nless the Company and your client can come to an agreement on the terms of his release, he will continue to be in breach of his Employment Agreement, BSC and GSC will not have released him from its terms, and ***any company in the CRM industry*** that attempts to hire him will expose itself immediately to an interference with contract claim and payment of additional damages or ***equitable relief***.

Kiland Decl., Ex. D [DE 14] (emphasis added).[11]

Beside the fact that Boston Scientific's July 7th email refers to the "Employment Agreement" (which is expressly composed of both the Guidant and the Boston Scientific Agreements), it was the Boston Scientific Agreement component of the Employment Agreement (as opposed to the Guidant Agreement component) that imposed, but also explicitly eliminated as to California employees, nationwide, industry-specific non-compete restraints, including a customer non-solicitation provision.  *See* Boston Scientific Agreement ¶¶ 6-8 [DE 9 Ex. 5].  The Boston Scientific Agreement's Attachment "A" (State Law Modifications) expressly eliminated

---

enforceable obligation to make sales for Boston Scientific (making no sales simply gave Boston Scientific the right to terminate him).  Moreover, the Employment Agreement "automatically" terminated pursuant to its own terms/"Training Guidelines."  Guidant Agreement ¶ 9(f), Ex. 3.

[11]   Boston Scientific made other threats to bully Kiland from working for a competitor.  *See* Kiland Decl. ¶¶ 8-10 [DE 14].  Consistent with the intention expressed in Boston Scietific's July 7th email, restraining competition is and was the *main subject* of BSC's complaint in the second-filed action in Minnesota, which expressly prays for injunctive relief against St. Jude for alleged tortious interference for employing Kiland after his agreement with Boston Scientific terminate.  *See* FAC, Ex. 9 [DE 9] (BSC's Minnesota Complaint ¶ 47, Prayer for Relief ¶ 3).

the non-compete and customer non-solicitation provision as to California employees such as Kiland in deference to California law (Bus. & Prof. Code § 16600).  Boston Scientific's July 7 email thus clearly ran afoul the Boston Scientific Agreement, as well as the California law to which it deferred, by insisting that Kiland could not work for "any company in the CRM industry" until after the expiration of the term-of-year provision, thus directly injecting the Boston Scientific Agreement (and its California forum selection provision) into the parties' dispute.

Over two months later after St. Jude hired Kiland, St. Jude and Kiland filed this first-filed action, claiming that: (a) Boston Scientific had violated three California statutes governing employment practices and competition for human resources in California, where Kiland lived and worked for Boston Scientific and where this dispute between the parties arose, and (b) that Kiland had the right, as expressly recognized and incorporated into the Boston Scientific Agreement to work for a competitor after the termination of his Employment Agreement, "regardless of reason for termination."  *See* FAC [DE 9] ¶¶ 32-48, 51-52, 68-70, 75-76, 80, 82-84, 100-101, 108, 114, 118–120.  Specifically, Plaintiffs allege that Boston Scientific fraudulently induced Kiland to sign a long-term agreement wrongfully calculated by Defendants to prevent Kiland from working for a competitor after he learned about Boston Scientific's criminal indictment, guilty plea, and total recall of medical devices it was his job to sell—material information known to Boston Scientific but withheld from Kiland when Boston Scientific recruited him to relocate to California.

In addition, St. Jude and Kiland allege that Boston Scientific unlawfully seek to treat the "Employment Agreement" as an "illegal" post-employment restraint against competing, inasmuch as it had threatened to seek "equitable relief" to prevent Kiland from working for "any company in the CRM industry" if he stopped working for Boston Scientific.  Boston Scientific took that position even though it directly contravened California law and violated the Boston Scientific Agreement, wherein Boston Scientific (through the State Law Modifications Attachment) had expressly recognized that Kiland, as a California employee, had the right to work for a competitor and solicit customers after his employment terminated, regardless of reason for termination.  Both Kiland and St. Jude have also sued Boston Scientific for unfair competition in violation of

Business and Profession Code sections 16600 and 17200 for including in the Boston Scientific

Agreement an "illegal" employee non-solicitation provision. *See* FAC ¶¶ 34-36 [DE 9].

Despite Boston Scientific's myopic view of this first-filed action, both the Guidant and

Boston Scientific Agreements are integrally involved in the claims brought here, since both

contracts were procured by fraud, both required good faith and fair dealing by Boston Scientific

(which was not practiced), and both concern the termination and post-termination rights and

obligations related to Kiland's employment with Boston Scientific in California.

### 3. Venue In California Is Proper Because This Action Was Filed To Vindicate California's Non-Waivable Public Policies, Manifested In Labor Code § 970 And Bus. & Prof. Code § 16600, Which Were Adopted For A Public Reason.

As set forth in Plaintiffs' First Amended Complaint and Motion for a Preliminary

Injunction, this first-filed action includes statutory claims over which California has a materially

greater interest than any other forum in adjudicating—specifically, Boston Scientific's fraudulent

employment of Kiland in violation of California Labor Code section 970, and contractual efforts

to restrain competition by Kiland in violation of California Business and Professions Code section

16600. Both of these statutes were enacted for a public reason:

- *Labor Code section 970* makes it unlawful to "influence, persuade, or engage any person to change . . . from any place outside to any place within the State . . . for the purpose of working in any branch of labor, through or by means *of* knowingly false representations . . . concerning . . . [t]he kind, character, existence of such work . . . ." Labor Code § 970(a). This statute was adopted for "a public purpose: to protect the community from the harm inflicted when a fraudulently induced employment ceases and the former employee is left in the community without roots or resources and becomes a charge on the community." *Mercuro v. Superior Court,* 96 Cal. App. 4th 167, 180 (1982). To deter such misconduct and avoid the corresponding burden on California's economy, the Legislature made such conduct criminal and provided a special civil remedy that "double damages resulting from such misrepresentations . . . ." Labor Code §§ 971, 972.

- *Business and Professions Code section 16600* provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." This anti-trust law makes it unlawful to include a post-employment restraint on competition in a California employment contract.[12] It also constitutes unfair competition in

---

[12] *See Edwards,* 44 Cal.4th at 949 (discussing California's "prohibition-against-restraint rule"); *D'Sa v. Playhut, Inc.,* 85 Cal. App. 4th 927, 933 (2000) (because restraint on competition "violated public policy, it necessarily followed that requiring prospective workers to sign [it] as a condition of employment was contrary to law."); *Application Group, Inc. v. Hunter Group, Inc.,*

1    violation of California's public policy to threaten to enforce a valid contractual
     provision for the unlawful purpose of restraining competition. *See Herzog v. "A"*
2    *Co.,* 138 Cal. App. 3d 656, 660 (1982) (letter threatening to enforce confidentiality
     provision, not to protect trade secrets but to restrain competition, is contrary to
3    public policy and supports claim for unfair competition/tortious interference).

4         Because these statutes were enacted for a public reason, and not just to protect the rights of

5    individual employees, California employees do not have the right to waive the protections

6    afforded by these statutes (*see* Civil Code §§ 1668, 3513; *Gentry v. Sup. Ct.,* 42 Cal.4th 443, 453-

7    56 (2007)), either directly through an express waiver, or indirectly through the enforcement of a

8    foreign forum selection clause coupled with a foreign choice-of-law provision as found in the

9    Guidant Agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614,

10   637 n.19 (1985) (foreign forum selection clause, when coupled with a foreign choice-of-law

11   clause should not be enforced where they could operate "in tandem as a prospective waiver of a

12   party's right to pursue statutory remedies for antitrust violations"); *Doe I v. AOL LLC,* 552 F.3d

13   1077, 1084 & n. 12-13 (9th Cir. 2009) ("forum selection clause, together with the choice of law

14   provision, [improperly] effect a waiver of statutory remedies"); *Hall v. Superior Court,* 150 Cal.

15   App. 3d 411, 415 (1983) (refusing to enforce a Nevada forum selection clause that was coupled

16   with a Nevada choice-of-law provision because of California's strong policy to protect its citizens

17   from securities fraud as reflected in California's "blue-sky" statutes). Defendants' Venue Motion,

18   which does not address this issue or the claim splitting that would necessarily result from their

19   construction of Kiland's employment documents, should be denied for this additional reason.

20                   **4.    It Would Be Unreasonable To Enforce The Minnesota Forum
                            Selection Clause For Additional Reasons.**

21        Defendants misrepresent that "Kiland and St. Jude have not argued that the forum selection

22   clause is unreasonable, nor find any fault with it." Venue Motion [DE 34] at 8. As set forth in

23   Plaintiffs' complaint and preliminary injunction motion, Defendants' proffered interpretation of

24   Kiland's employment documents and attempted enforcement of the Minnesota forum selection

25   clause would be unreasonable for a number of reasons, as it would be contrary to the express

26

27   _____

28   61 Cal. App. 4th 881, 908 (1998) (violation of Bus. & Prof. Code § 16600 constitutes unfair
     competition prescribed by Bus. & Prof. Code § 17200).

terms of the Employment Agreement, would necessarily result in "claim splitting" and risk an improper contractual waiver of strong California public policies.  In addition, it would be unreasonable for at least two other reasons not addressed in Defendants' Venue Motion:  (a) It would unreasonably override St. Jude's due process right to adjudicate its unfair competition claims against a competitor in a forum of its choice, and (b) it would unreasonably condone Boston Scientific's conduct in fraudulently inducing Kiland into the agreement in the first instance and denying the benefit of a California forum selection clause that plainly covers his claims.

This action includes an unfair competition claim by a competitor of Boston Scientific, whose due process right to litigate in a forum of its choosing should not be upset simply because it had to hire an employee to have a justiciable controversy over Boston Scientific's deceptive and unfair employment practices.  St. Jude's interests in this litigation transcend Kiland and extend to vindicate the rights of other qualified CRM sales persons who also have been victimized by Boston Scientific's fraudulent withholding of material information concerning its criminal misconduct, fatally defective ICDs, and efforts to cover that up, in an effort to "bind" them to long-term employment contracts with post-employment restraints on competition when Boston Scientific's criminal misconduct was disclosed and its fatally defective ICDs were recalled.

Notably, Defendants recognize that on a motion to dismiss for improper venue, the Court should be cognizant of "fairness" and the "balance of convenience."  Venue Motion [DE 34] at 1 n. 14.  Here, both of these factors weigh strongly in favor of litigating in California.  There would be nothing fair about depriving St. Jude its choice of forum to challenge an unlawful employment practice in California, simply because its competitor has fraudulently induced employees to sign contracts with foreign forum-selection clauses.  Moreover, there is nothing convenient about depriving either Plaintiff of their choice of forum, particularly where, as here, the parties' dispute arose in California and concerns the application of California statutes, and relevant witnesses reside in California, where Kiland worked for Boston Scientific.  Rather, it is far more fair and convenient to enforce the Employment Agreement as drafted by Boston Scientific and to litigate the parties' entire dispute in California, one of the three expressly designated forums.  BSC, of

course, can bring its entirely redundant but far less inclusive action, both in terms of the number of claims and parties, as a counterclaim in California.

**IV.** **CONCLUSION**

In light of the above and foregoing, Defendants' Motion to Stay Action and Defendants' Motion to Dismiss Plaintiffs' Action for Improper Venue must be denied.

Dated: November 16, 2010

FELDMAN GALE, P.A.
JAMES A. GALE
TODD M. MALYNN

By:  /s/ Todd M. Malynn
Todd M. Malynn
Attorneys for Plaintiff St. Jude
Medical S.C., Inc.

Dated: November 16, 2010

THE MICLEAN LAW GROUP
DAVID J. MICLEAN

By:  /s/ David J. Miclean
David J. Miclean
Attorneys for Plaintiff Blair Kiland

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all the counsel of record who are deemed to have consented to electronic service are being served with a copy of **PLAINTIFFS' OPPOSITION TO (A) DEFENDANTS' MOTION TO STAY PLAINTFFS' ACTION AND (B) DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' ACTION FOR IMPROPER VENUE** via United States Postal Service, Electronic Mail and the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 16, 2010.

**Via U.S. Mail and Electronic Mail**

The Miclean Law Group
303 Twin Dolphin Drive
Suite 600
Redwood Shores, CA 94065
Email: DMiclean@micleanlaw.com

Ann Marie Reding
Morgan Lewis & Bockius, LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Email: areding@morganlewis.com

    /s/Todd M. Malynn
Todd M. Malynn
FELDMAN GALE PA
880 W. 1st Street, Ste. #315
Los Angeles, California  90012
Attorneys for Plaintiff St. Jude
Medical S.C., Inc.

MEMORANDUM IN OPPOSITOIN TO DEFENDANTS' MOTION TO STAY AND
DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE