UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BLAIR KILAND and ST. JUDE MEDICAL S.C., INC., | Case No:  C 10-4105 SBA |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, AND DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STAY** |
| vs. | |
| BOSTON SCIENTIFIC CORPORATION and GUIDANT SALES CORPORATION, | |
| Defendants. | Dkts. 13, 21, 34 |

Plaintiff Blair Kiland ("Kiland") and his current employer, Plaintiff St. Jude Medical S.C., Inc. ("St. Jude"), (collectively referred to herein as "Plaintiffs") bring this diversity action against Kiland's former employers Defendants Boston Scientific Corporation ("BSC") and Guidant Sales Corporation ("Guidant" or "GSC") (collectively referred to herein as "Defendants"), asserting claims for, inter alia, breach of contract, breach of California Labor Code § 970, and unfair competition.  The parties are presently before the Court on the following motions: (1) Defendants' Motion to Dismiss for Improper Venue (Dkt. 34); (2) Plaintiffs' Motion for a Preliminary Injunction (Dkt. 21); and (3) Defendants' Motion to Stay (Dkt. 13).

Having read and considered the papers filed in connection with these matters and being fully informed, the Court hereby DENIES Defendants' Motion to Dismiss, DENIES Defendants' Motion to Stay, and GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Preliminary Injunction.  The Court, in its discretion, finds these matters suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b).

# I.      FACTUAL BACKGROUND

## A.      KILAND'S EMPLOYMENT AGREEMENT WITH DEFENDANTS

On December 8, 2009, Kiland entered into an employment agreement with BSC and its wholly-owned subsidiary, Guidant.  First Amended Complaint ("FAC"), Exs. 3-6.  Under the agreement, Kiland became employed as a sales representative for Guidant's cardiac rhythm management ("CRM") product line.  Id.  The employment agreement is comprised of two contemporaneously signed documents: the Employment Agreement between Kiland and Guidant ("Guidant Agreement"); and the Boston Scientific Corporation Agreement Concerning Employment for U.S. Employees ("Boston Scientific Agreement").  Id.

### 1.      The Guidant Agreement

The Guidant Agreement, signed by Kiland on September 8, 2009, states that "[a]s a condition of Employee [Kiland's] being employed by GSC … Employee and GSC enter into this Agreement and a Boston Scientific Corporation Agreement Concerning Employment for U.S. Employees …."  Id., Ex. 3 at 1.  The Guidant Agreement also states that Kiland will be employed "for a term of years from the Effective Date through December 31, 2012," and governs his compensation and sales territory.  Id.  In addition, the Guidant Agreement provides:

> Entire Agreement.  This Agreement and the Boston Scientific Corporation Agreement [C]oncerning Employment for U.S. Employees signed by Employee simultaneously with this Agreement constitute the entire agreement between the parties with respect to Employee's employment with GSC. … This Agreement and the Boston Scientific Corporation Agreement [C]oncerning Employment for U.S. Employees supersede all prior oral and written agreements, representations, and promises between the parties.

Id. ¶ 16.

The Guidant Agreement also contains the following choice of law and forum selection provision:

> Governing Law and Forum.  Any disputes or claims between the parties or Employee and GSC agents or employees relating directly or indirectly to this Agreement, or arising hereunder, or relating directly or indirectly to Employee's employment with GSC shall be governed by the laws of the State of Minnesota regardless of conflict of laws rules of Minnesota or any other state.  Employee

consents to the exclusive jurisdiction of the state and federal courts of Minnesota for the resolution of any such disputes or claims and specifically waives any objection to such disputes or claims being brought and resolved exclusively in those courts.  Employee agrees that he will not commence litigation against GSC or its agents or employees for such disputes in any court outside of the State of Minnesota.

Id. ¶ 18.

### 2.  The Boston Scientific Agreement

The Boston Scientific Agreement, also signed by Kiland on September 8, 2009, states that "the Employee [Kiland]" agrees to the provisions stated therein "[i]n consideration of an agreement by Boston Scientific Corporation or any of its existing or future affiliated subsidiaries or other entities … to hire or promote [him] …." Id., Ex. 5 at 1.  The Boston Scientific Agreement includes a covenant not to compete and a customer non-solicitation provision, both of which cover the period of employment and a "restricted period" following termination of employment.  Id. ¶¶ 6, 8.

"Attachment A" to the Boston Scientific Agreement, entitled "State Law Modifications," provides that, while the Employee is employed in California, the Employee is exempt from the post-employment aspects of the agreement's covenant not to compete and customer non-solicitation provision.  Id., Ex. 6 at 1.

Lastly, the Boston Scientific Agreement contains the following choice of law and forum selection provision:

> Governing Law; Consent to Jurisdiction.  Although the Employee may work for Boston Scientific in various locations, the Employee agrees that this Agreement shall be interpreted and enforced as a Massachusetts contract and shall be interpreted and enforced in accordance with the internal laws of the Commonwealth of Massachusetts without regard to its conflict of law rules. Both parties agree that any action concerning this Agreement shall be commenced exclusively in the courts (including Federal Courts) in either (i) the Commonwealth of Massachusetts or (ii) the State of Employee's last (or, if still employed, the Employee's current) primary work location for Boston Scientific.

Id., Ex. 5 ¶ 18.

Kiland asserts that he worked exclusively in Northern California while employed by Defendants.  FAC ¶ 6.  Defendants do not dispute this point in any of their motion papers.

**B.      KILAND'S DISPUTE WITH DEFENDANTS REGARDING HIS EMPLOYMENT**

In February 2010, Kiland began working in Santa Rosa, California, for Defendants, after relocating from North Dakota and ceasing his employment with Medtronic Inc.  Dkt. 22-2, Kiland Decl. ¶ 3.  Kiland alleges that within two months of working for Defendants "it became painfully obvious that misrepresentations were made" regarding the quality of the products he was responsible for selling, as those products were taken off the market from March 14, 2010 through April 14, 2010 "purportedly due to BSC's non-compliance with FDA requirements."  Id. ¶ 4.  Kiland further alleges that on March 11, 2010 he learned that one of his promised field clinical supporters would be on a leave of absence from April 12, 2010 to July 12, 2010, and that other filed clinical support employees were unavailable.  Id.  Moreover, Kiland asserts that Defendants "grossly overstated" the total revenue volume for the territory to which he had been assigned.  Id.  Finally, Kiland alleges that Defendants had "drastically reduced all customer local and national education programs," and that Kiland was not made aware of that fact prior to his employment.  Id.

Kiland explains that after he discovered Defendants' misrepresentations he "approached BSC management in hopes of reaching a mutually agreeable separation from the company." Id. ¶ 8.  Kiland asserts that he was advised by two BSC area presidents that he was "'locked in' to a three-year contract, that [he] would be kept out of the industry if he left BSC, and that BSC had a successful history of suing former employees."  Id.  In June 2010, Defendants allegedly provided Kiland with an "Agreement to Terminate Employment Agreement," which included a prohibition on his ability to work for any competitor in California, North Dakota, or eleven other states through December 31, 2013, which is one year beyond the term of the Guidant Agreement.  Id.

Kiland states that he "decided to allow [his] BSC Employment Agreement to automatically terminate under its own terms," by failing to comply with the training requirement set forth in the Guidant Agreement.  Specifically, the Guidant Agreement provides that the agreement will terminate "immediately" upon Kiland's failure to complete certain training within twenty-five weeks.  Id. ¶¶ 9-10; FAC, Ex. 3 at 9, Attachment A.  After that

twenty-five week period passed, Kiland notified Defendants that he had not completed the required training.  Kiland Decl. ¶ 10.  In response, Defendants disputed Kiland's contention that his employment had automatically terminated, and placed him on unpaid administrative leave.  Id.

On July 7, 2010, Defendants sent Kiland's attorney an email stating:

> [U]nless the Company and your client can come to an agreement on the terms of his release, he will continue to be in breach of his Employment Agreement, BSC and GSC will not have released him from its terms, and any company in the CRM industry that attempts to hire him will expose itself immediately to an interference with contract claim and payment of additional damages or equitable relief.

Id., Ex. B.

## II.   PROCEDURAL BACKGROUND

### A.   THE INSTANT ACTION

On September 13, 2010, Kiland and his present employer, St. Jude, filed the instant action against Defendants.  Plaintiffs did not serve Defendants with their initial Complaint.  However, on September 14, 2010, St. Jude provided Defendants with a copy of the Complaint.  FAC, Ex. 8.  On September 29, 2010, Plaintiffs filed their FAC, asserting the following claims: (1) Violation of California Labor Code § 970 (by Kiland against Defendants); (2) Fraud in the Inducement (by Kiland against Defendants); (3) Breach of Contract (by Kiland against Defendants); (4) Unfair Competition under California Business and Professions Code § 17200 (by Kiland and St. Jude against Defendants); and (5) Declaratory Relief (by Kiland and St. Jude against Defendants).  Defendants were served with the FAC on October 1, 2010.

### B.   THE MINNESOTA ACTION

On September 24, 2010, BSC filed an action, captioned Boston Scientific Corp. v. Blair Kiland and St. Jude Medical S.C., Inc., 10-CV-4053 (DSD/JJK), against the instant Plaintiffs Kiland and St. Jude in the United States District Court for the District of Minnesota (the "Minnesota Action").  In that action, BSC asserts a breach of contract claim against Kiland, alleging that he breached the Guidant Agreement "by, among other things, terminating his employment with Boston Scientific … and commencing litigation against Boston Scientific

regarding the Agreement outside of the state of Minnesota."  Dkt. 15, Defendants' Request for Judicial Notice ("RJN"), Ex. A.[1]  BSC also asserts a claim for tortious interference with contract against St. Jude, alleging that St. Jude interfered with the Guidant Agreement by hiring Kiland and commencing the instant action in California.  Id.  The Boston Scientific Agreement is not at issue in the Minnesota Action, and Guidant is not a party to that action.

On September 27, 2010, BSC filed a motion for a temporary restraining order ("TRO") in the Minnesota Action, seeking to enjoin Kiland and St. Jude from proceeding with this action.  Id., Ex. B.  The Minnesota District Court ("Minnesota Court") held a hearing on the TRO motion on September 30, 2010.  Dkt. 51, Reding Decl., Ex. F.  Also on September 30, 2010, Kiland and St. Jude filed in the Minnesota Action a motion to dismiss, stay, or transfer that action, in view of the instant lawsuit.  At the September 30, 2010 hearing on the TRO motion, the Minnesota Court continued the matter to November 19, 2010, so that the parties' pending motions could be heard together.  RJN, Ex. E.

The Minnesota Court has since issued an Order continuing the November 19, 2010 hearing date, upon motion of Kiland and St. Jude, to an unspecified date.  Dkt. 43-2, Malynn Opp. Decl., Ex. B.  In that Order, the Minnesota Court stated that "Defendants' argument that California is a proper forum for this action may have merit, and therefore, the court determines that judicial efficiency and comity favor continuing this matter to allow the first-filed court to address the forum-selection issue."  Id.

## C.   THE CURRENT MOTIONS

Now, Defendants have filed in this action a Motion to Dismiss and a Motion to Stay.  By these motions, Defendants request that the Court dismiss this action under Federal Rule of Civil Procedure 12(b)(3), on the ground that venue in this district is improper, or, in the alternative, stay this action pending resolution of the Minnesota Action.

---

[1] Defendants ask the Court to take judicial notice of the complaint and certain motion papers filed in the Minnesota Action.  Dkt. 15.  Plaintiffs have not opposed this request. Pursuant to Federal Rule of Evidence 201, Defendants' request for judicial notice is GRANTED.

1    Plaintiffs, on the other hand, have moved for a preliminary injunction, seeking to enjoin

2    Defendants under the "first-to-file" rule from proceeding in the Minnesota Action.  Plaintiffs

3    also seek an order enjoining Defendants from "interfering with this Court's jurisdiction or

4    commencing any other action that presents issues related to this action," and "from interfering

5    with Kiland's right to work for St. Jude in his profession, and right to call upon current or

6    former customers, employees or consultants on behalf of St. Jude."  Dkt. 21, Pls.' Mtn. at 1.[2]

7    **III.    DEFENDANTS' MOTION TO DISMISS**

8        **A.    LEGAL STANDARD**

9        A motion to dismiss for improper venue based on a forum selection clause is properly

10   based on Rule 12(b)(3).  See Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir.

11   1996).  In resolving such a motion, the pleadings need not be accepted as true and the court

12   may consider facts outside of the pleadings.  Murphy v. Schneider National, Inc., 349 F.3d

13   1224, 1229 (9th Cir. 2003).  In resolving a Rule 12(b)(3) motion based upon a forum selection

14   clause, the district court must draw all reasonable inferences in favor of the non-moving party

15   and resolve all factual conflicts in favor of the non-moving party.  Id.

16       The Ninth Circuit has held that a district court, sitting in diversity, must interpret forum

17   selection clauses under federal common law, without regard to any choice of law provision in

18   the subject agreement.  See Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513

19   (9th Cir. 1988) ("because enforcement of a forum clause necessarily entails interpretation of

20   the clause before it can be enforced, federal law also applies to interpretation of forum

21

22

23

24        [2] After the close of briefing on the parties' motions, the Court ordered the parties to

25   submit supplemental briefing regarding the question of whether the choice of law provisions of
     the agreements can properly be enforced with respect to Plaintiffs' claims under the California

26   Labor Code § 970 and/or Plaintiffs' unfair competition claim.  Upon further review of the
     parties' motions and supplemental briefing, the Court finds that the supplemental issue briefed

27   by the parties does not answer the salient question before this Court, which is whether

28   Plaintiffs' claims implicate both the Boston Scientific Agreement and the Guidant Agreement,
     as explained more fully below.

selection clauses"); accord Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009) ("We apply federal law to the interpretation of the forum selection clause.").[3]

When interpreting a contract according to principles of the federal common law, courts look to "general principles for interpreting contracts." County of Santa Clara v. Astra United States, 588 F.3d 1237, 1243 (9th Cir. 2009).  Under the general principles of contract interpretation, "[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 2000).  That is, when applying federal contract interpretation law, courts give the words of a contract their "common or normal meaning" unless circumstances show that a more specialized meaning is intended.  Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987).  The courts presume, further, that "every provision was intended to accomplish some purpose, and that none are ... superfluous."  Chaly-Garcia v. United States, 508 F.3d 1201, 1204 (9th Cir. 2007) (internal quotations omitted).  Moreover, "[p]reference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory."  Id.  A forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).

**B.   ANALYSIS**

Defendants argue that this action should be dismissed for improper venue because Plaintiffs' claims concern only the Guidant Agreement, which contains a Minnesota forum selection clause, and do not implicate the Boston Scientific Agreement, which includes a California forum selection clause.

Defendants are incorrect.  For instance, in his claim for fraud in the inducement, Kiland asserts that he was materially mislead into signing the "Employment Agreement," which Plaintiffs define in the FAC as comprising both the Guidant Agreement and the Boston

---

[3] Both parties have relied, without explanation, on California law in support of their respective interpretations of the forum selection clauses at issue.  In view of Manetti-Farrow, that reliance is misplaced.

Scientific Agreement.  See FAC ¶¶ 32, 101.  Kiland's breach of contract claim also alleges that Defendants breach the "Employment Agreement."  Id. ¶¶ 106-109.  Moreover, Plaintiffs specifically challenge the non-solicitation provision contained in the Boston Scientific Agreement as being an impermissible restraint of trade under California Business and Professions Code § 16600.  Id. ¶ 34.  Also, in their unfair competition claim, Plaintiffs allege that Defendants engaged in unfair competition in trying to "lock-up" CRM employees under long-term agreements, and thereafter "threatening and seeking to enforce those agreements to prevent employees from working in their chosen profession with a competitor ….," which are allegations that fairly implicate the non-compete provision of the Boston Scientific Agreement.  Id. ¶¶ 114, 120.  Plaintiffs further implicate the Boston Scientific Agreement in their FAC by asserting that the Boston Scientific Agreement and the Guidant Agreement, taken together, contain several conflicting contractual provisions, including choice of law and forum selection provisions, which were intended to frustrate the rights of Kiland.  Id. ¶ 37.  As such, Plaintiffs have placed both agreements directly at issue with their FAC.  Therefore, Defendants' Motion to Dismiss this action for improper venue is DENIED.[4]

## IV.    **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

### A.    LEGAL STANDARD

Under the "first-to-file" rule, "[w]hen a district court has jurisdiction over all parties involved, it may enjoin later filed actions."  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843-844 (9th Cir. 1986) (finding that the "trial court exercised sound judicial discretion in enjoining the later filed Illinois action").  "When two suits are initiated with substantially similar claims, the general rule is that the first case to be filed has priority.  Absent special circumstances, the first case should proceed while the second case is enjoined."  Broadcom Corp. v. Qualcomm Inc., 2005 WL 5925585, *2 (C.D. Cal. Sept. 26, 2005); see also Serco Servs. Co., L.P. v. Kelly Co., Inc., 51 F.3d 1037, 1039 (Fed. Cir. 1995) ("The first-filed

---

[4] As indicated above, the Boston Scientific Agreement contains a California forum selection clause.  Defendants have not argued that California is an improper venue for claims arising under that agreement, as they argue only that the California forum selection clause is not implicated, in any fashion, by Plaintiffs' claims.

1  action is preferred … unless considerations of judicial and litigant economy, and the just and

2  effective disposition of disputes, require otherwise.") (internal quotations omitted); <u>Pacesetter</u>

3  <u>Systems, Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 95 (9th Cir. 1982) ("Normally sound judicial

4  administration would indicate that when two identical actions are filed in courts of concurrent

5  jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose

6  would be served by proceeding with a second action."); <u>Alltrade, Inc. v. Uniweld Products,</u>

7  <u>Inc.</u>, 946 F.2d 622, 625 (9th Cir. 1991) ("The first-to-file rule was developed to serve the

8  purpose of promoting efficiency well and should not be disregarded lightly.") (internal

9  quotations omitted).

10  In applying the first-to-file rule, a court looks to three threshold factors: "(1) the

11  chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the

12  issues." <u>Z-Line Designs, Inc. v. Bell'O Int'l LLC</u>, 218 F.R.D. 663, 665 (N.D. Cal. 2003).  The

13  court with the first-filed action should "decide whether an exception to the first-to-file rule

14  applies." <u>Martin v. Geltech Solutions, Inc.</u>, 2010 WL 2287476, *2 (N.D. Cal. June 4, 2010)

15  (citing <u>Pacesetter</u>, 678 F.2d at 96).  "[T]his 'first to file' rule is not a rigid or inflexible rule to

16  be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial

17  administration." <u>Pacesetter</u>, 678 F.2d at 94-95.

18       **B.** **ANALYSIS: FIRST-TO-FILE RULE**

19  Plaintiffs seek an order enjoining Defendants from prosecuting the Minnesota Action

20  under the "first-to-file" rule.  Simply stated, Plaintiffs assert that this suit has priority and,

21  therefore, the later-filed Minnesota Action should be enjoined.

22  In opposing Plaintiffs' motion, Defendants do not dispute that this action was first filed.

23  Moreover, Defendants do not dispute that there is a similarity of parties between the two

24  actions.  Indeed, all parties to the Minnesota Action (BSC, Kiland, and St. Jude) are presently

25  before the Court in the instant action, with the addition of Guidant.  Finally, Defendants do not

26  argue that the issues in this action and the Minnesota Action are dissimilar.

27  Instead, Defendants present a single challenge to Plaintiffs' motion.  Specifically,

28  Defendants assert that the first-to-file rule does not apply here in view of the forum selection

1   provision contained in the Guidant Agreement, which requires litigation to take place in

2   Minnesota.  In support of that argument, Defendants rely on various decisions finding that the

3   first-to-file rule cannot be applied to avoid a valid forum selection clause.  See e.g., Megadance

4   USA Corp. v. Kristine Knipp, 623 F. Supp. 2d 146, 149 (D. Mass. 2009) ("It is improper for a

5   party to invoke the first filed doctrine in the face of a clearly articulated forum selection clause

6   in a contract.").

7         Defendants assert, as they do in their motion to dismiss, that Plaintiffs cannot rely on

8   the California forum selection clause contained in the Boston Scientific Agreement because

9   Plaintiffs' claims in this action concern only the Guidant Agreement, and do not implicate the

10  Boston Scientific Agreement.  As explained above, the Court rejects that argument, as the FAC

11  in this action clearly implicates both agreements.  At bottom, based on the limited argument

12  presented, Defendants have not established that this district is an improper forum for this

13  action, so as to require an exception to the first-to-file rule.

14        For these reasons, the Court finds that the first-to-file rule applies in this case, and,

15  therefore, Plaintiffs' Motion for a Preliminary Injunction enjoining BSC from prosecuting the

16  Minnesota Action is GRANTED.  However, while Plaintiffs seek to enjoin both BSC and

17  Guidant from proceeding with the Minnesota Action, Guidant is not a party to the Minnesota

18  Action.  Therefore, Plaintiffs' motion to enjoin Guidant is DENIED as MOOT.

19      **C.**    **PLAINTIFFS' REMAINING REQUESTS FOR INJUNCTIVE RELIEF**

20        Plaintiffs also seek an order enjoining Defendants "from interfering with Kiland's right

21  to work for St. Jude in his profession, and right to call upon current or former customers,

22  employees or consultants on behalf of St. Jude."  Pls.' Mtn. at 1.  To obtain preliminary

23  injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a

24  likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) a

25  balance of equities tips in the favor of the moving party; and (4) that an injunction is in the

26  public interest.  Winter v. Natural Res. Def. Council, Inc., ---U.S. ---, 129 S.Ct. 365, 376

27  (2008).  Here, Plaintiffs fail to cite Winter or any factors germane to their request for injunctive

28  relief, and merely assert that an injunction should issue to "avoid irreparable harm to [Kiland's]

career." Pls.' Mtn. at 25. The Court is not inclined to manufacture arguments on Plaintiffs' behalf. See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). As such, Plaintiffs' motion in this regard is DENIED.

Finally, Plaintiffs seek to enjoin Defendants from "interfering with this Court's jurisdiction or commencing any other action that presents issues related to this action." Pls.' Mtn. at 1. While the Court finds it appropriate to enjoin BSC from proceeding in the currently pending Minnesota Action under the first-to-file rule, Plaintiffs have offered no authority supporting their vague and unspecified request to enjoin Defendants from "interfering with this Court's jurisdiction" and from filing any other lawsuit that "presents issues related" to this lawsuit. Therefore, Plaintiffs' motion in this regard is also DENIED.

## V.   DEFENDANTS' MOTION TO STAY

In addition to their motion to dismiss, Defendants have filed an alternative motion to stay this action pending resolution of the Minnesota Action. In that motion, Defendants again argue that this is an improper venue for Plaintiffs' claims. Given the Court's determination that BSC be enjoined from proceeding with the Minnesota Action, Defendants' Motion to Stay this action pending resolution of the Minnesota Action is DENIED as MOOT.

## VI.   CONCLUSION

For the above stated reasons,

IT IS HEREBY ORDERED THAT:

1.      Defendants' Motion to Dismiss for Improper Venue (Dkt. 34) is DENIED.

2.      Plaintiffs' Motion for a Preliminary Injunction enjoining Boston Scientific Corporation from prosecuting the Minnesota Action (Dkt. 21) is GRANTED; Boston Scientific Corporation is enjoined from prosecuting the Minnesota Action.

3.      Plaintiffs' Motion for a Preliminary Injunction enjoining Guidant Sales Corporation from prosecuting the Minnesota Action (Dkt. 21) is DENIED as MOOT.

4.      Plaintiffs' Motion for a Preliminary Injunction enjoining Defendants from interfering with Kiland's right to work for St. Jude in his profession, and right to call upon

1  current or former customers, employees or consultants on behalf of St. Jude (Dkt. 21) is

2  DENIED.

3       5.     Plaintiffs' Motion for a Preliminary Injunction enjoining Defendants from

4  interfering with this Court's jurisdiction or commencing any other action that presents issues

5  related to this action (Dkt. 21) is DENIED.

6       6.     Defendants' Motion to Stay (Dkt. 13) is DENIED as MOOT.

7       7.     This Order terminates Dockets 13, 21, and 34.

8       IT IS SO ORDERED.

9  Dated: March 31, 2011

10                                                     SAUNDRA BROWN ARMSTRONG

                                               United States District Judge